IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| TAMI SMITH, individually and on behalf of all similarly-situated persons, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| MACO MANAGEMENT COMPANY, INC., and JAMES K. MADDOX and KATRINA THOMPSON, individually, | ) ) ) ) ) |
| Defendants. | ) ) ) |

Civil No.:_____

COLLECTIVE ACTION COMPLAINT
FOR VIOLATION OF THE FAIR LABOR
STANDARDS ACT OF 1938

## **COMPLAINT**

Comes Tami Smith and files this lawsuit against the Defendants, MACO Management Company, Inc., and James K. Maddox and Katrina Thompson, individually, on behalf of herself and all others similarly-situated, pursuant to §216(b) of the Fair Labor Standards Act (hereinafter "FLSA"), and for their cause of action would state as follows:

### **I.    INTRODUCTION**

1. Plaintiff brings this action against MACO Management Company, Inc., and James K. Maddox and Katrina Thompson, individually (hereinafter referred to as "Defendants"), pursuant to the collective action provision of the FLSA found at §216(b), for legal relief to redress unlawful violations of Plaintiff's rights under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq*. ("FLSA"), which have deprived the Plaintiff, as well as others similarly-situated to Plaintiff, of their lawful wages.

2. Other current and former employees of Defendants are also entitled to receive their

proper hourly unpaid wages and/or overtime compensation for the reasons alleged in this Complaint. Plaintiff is permitted to maintain this action "for and on behalf of [herself] and other employees similarly-situated." 29 U.S.C. §216(b).

3. This action is brought to recover significant amounts of unpaid overtime compensation owed to Plaintiff and all current and former employees of Defendants who are similarly-situated to Plaintiff, pursuant to the FLSA. Plaintiff and the collective group of similarly-situated employees are, or have been, employed by Defendants as Property Managers and/or District Managers within the three year period prior to the filing of this Complaint through the present.

4. During the three year period prior to the filing of this Complaint through the present, Defendants committed violations of the FLSA by requiring and/or suffering or permitting their non-exempt hourly-paid employees, including Plaintiff, to routinely work more than 40 hours per week without payment of overtime compensation.

5. Plaintiff and all similarly-situated employees who elect to participate in this action seek unpaid overtime compensation, an equal amount of liquidated damages, attorneys' fees, and costs pursuant to 29 U.S.C. §216(b).

## II. THE PARTIES

### A. THE PLAINTIFF

6. Plaintiff currently resides in Cookeville, Tennessee, and is a citizen of the United States. Within the last three year period, Plaintiff Smith was employed by Defendants as an hourly-paid Property Manager and District Manager.

7. Plaintiff was employed as a Property Manager for Defendants from approximately October of 2011 through December of 2017 when she became a District Manager. Plaintiff was a District Manager from December 2017 until June 9, 2017, when she quit because of the exhausting and uncompensated overtime hours she was required to work by the Defendants.

8. During her employment with Defendants, Plaintiff worked as an hourly paid, non-exempt employee who routinely worked more than 40 hours each workweek both as a Property Manager and District Manager. Even though she was non-exempt and worked a substantial number of overtime hours, Defendants failed to pay Plaintiff all the lawful overtime compensation to which Plaintiff was due as required by the FLSA.

9. At all times material to this action, Plaintiff and all similarly-situated members of this collective action were "employees" of Defendant MACO Management Company, Inc., as defined by §203(e)(1) of the FLSA.

10. At all times material to this action, Plaintiff and all similarly-situated members of this collective action were "employees" of Defendant James K. Maddox as defined by §203(e)(1) of the FLSA.

11. At all times material to this action, Plaintiff and all similarly-situated members of this collective action were "employees" of Defendant Katrina Thompson as defined by §203(e)(1) of the FLSA.

12. Plaintiff worked for Defendants within the territory of the United States within the three-year period preceding the filing of this lawsuit as both an hourly-paid Property Manager and District Manager.

13. Plaintiff was covered by the overtime provisions of §207 of the FLSA for the period during which she was employed by Defendants as an hourly-paid Property Manager and District Manager, and was thus entitled to receive overtime pay for the hours she worked in excess of 40 in a workweek in both positions.

### B. THE DEFENDANTS

14. Defendant MACO Management Company, Inc., (hereinafter "MACO") is incorporated under the laws of the state of Missouri, and maintains regional offices in at least four of the states in which it operates.

15. Throughout the three-year period preceding the filing of this lawsuit, MACO maintained and operated a regional office located at 1025 Livingston Road, Crossville, TN 38555.

16. Defendant MACO is a privately owned company which provides management services for low income multifamily housing units and apartments in ten states including Arkansas, Illinois, Indiana, Kansas, Kentucky, Mississippi, Missouri, Nebraska, Oklahoma, and Tennessee.

17. On its website, MACO states that it "now manages over 12,000 housing units scattered throughout ten states." *See* www.macocompanies.com.

4

Case 2:18-cv-00082   Document 1   Filed 09/17/18   Page 4 of 18 PageID #: 4

18. During the majority of the three year period prior to the filing of this lawsuit, Defendant MACO paid the Plaintiff and all other similarly-situated employees who worked as District Managers on an hourly basis.

19. Throughout the three year period prior to the filing of this lawsuit, Defendant MACO paid the Plaintiff and all other similarly-situated employees who worked as Property Managers on an hourly basis.

20. Throughout the three year period prior to the filing of this lawsuit, Defendant James K. Maddox was an owner and/or co-owner of MACO and served as its President.

21. During this same three year period, Defendant Katrina Thompson served as a Regional Director and/or in other upper level management positions, and was married to Defendant Maddox.

22. Because of her marriage to Defendant Maddox who served as MACO's President, Defendant Thompson wielded considerable power and authority over MACO's operations and employees throughout the company's operational territory.

23. Defendants Maddox and Thompson exercised operational control over numerous aspects of Defendant MACO's business operation.

24. Defendants Maddox and Thompson hired and fired employees, or had the authority to hire and fire employees; established and/or enforced pay levels and compensation policies and practices for employees; and made other decisions which affected the terms and conditions of work for Plaintiff and other similarly-situated hourly employees.

25. At all times material to this action, Defendants Maddox and Thompson implemented and/or enforced policies and practices designed to deprive Plaintiff and similarly-situated Property Managers and District Managers of their lawful overtime pay.

26. At all times material to this action, Defendants Maddox and Thompson knew that the law required that hourly-paid Property Managers and District Managers employed by MACO receive overtime pay for all hours worked in excess of forty hours in a workweek.

27. Defendants are subject to personal jurisdiction in the state of Tennessee for purposes of this lawsuit.

28. At all times material to this action, Defendants have operated an enterprise engaged in commerce or in the production of goods for commerce as defined by §203(s)(1) of the FLSA, and have had an annual gross volume of sales which has exceeded $500,000.

29. At all times material to this action, Defendants have been "employers" of Plaintiff as defined by §203(d) of the FLSA, as well as "employers" of all other hourly-paid Property Managers and District Managers.

30. The overtime provisions set forth in §207 of the FLSA apply to the Defendants.

### III. JURISDICTION AND VENUE

31. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 (federal question jurisdiction); and 29 U.S.C. §216(b) (FLSA).

32. Venue is proper in the Middle District of Tennessee pursuant to 28 U.S.C. §1391(b)-(c).

## IV. VIOLATIONS OF THE FLSA

### Defendants' Policy and Practice of Refusing to Compensate
### Hourly Employees for Overtime Hours Worked

33. Defendants have intentionally and repeatedly refused to pay Plaintiff and similarly-situated, hourly paid Property Managers and District Managers the overtime pay which they earned and to which they were entitled in violation of the provisions of the FLSA and corresponding federal regulations.

34. Throughout the three year period prior to the filing of this lawsuit through the present, Defendants have implemented and enforced a strict policy and practice prohibiting overtime compensation to Property Managers and District Managers throughout its operational territory, despite the fact that Defendants assign them tasks which require significant amounts of overtime hours to accomplish.

35. Defendants achieve this illegal end through the following means: mandating that Property Managers record no more than 8 hours a day and 40 hours in a workweek on their timesheets, and that District Managers record no more than 7.5 hours a day and 37.5 hours in a workweek on their timesheets; requiring Property Managers and District Managers to perform a heavy volume of job duties which are not capable of being accomplished in 40 hours or less; and overtly threatening employees that they will be disciplined if they report the overtime hours they are required to work.

**Property Managers**

36. Throughout the three year period prior to the filing of this lawsuit, Defendants paid Property Managers an hourly wage and classified them as non-exempt employees who were eligible for overtime pay under the FLSA and/or various state laws.

37. Throughout the three year period prior to the filing of this lawsuit, MACO has enforced a strict "no overtime" policy precluding its employees from reporting the overtime they worked, and Defendants instructed their District Managers and Regional Managers that they were not to allow Property Managers to report the hours they worked in excess of 40 hours in a workweek.

38. When full-time Property Managers are hired, they are informed that their work schedule is 8 a.m. to 5 p.m., and that MACO does not pay overtime compensation, even though Defendants are well aware that the extensive duties placed on Property Managers often require that they work in excess of forty hours in a workweek in order to satisfy their job duties and responsibilities.

39. Defendants instruct their Property Managers that no matter how many hours they actually work, they cannot report that they worked more than 40 hours in a workweek.

40. As a result, throughout the three year period preceding the filing of this lawsuit, full-time Property Managers were instructed to report that they worked from 8 a.m. to 5 p.m. Monday through Friday, with a daily one-hour lunch, for a total of 40 hours a week, no matter how many hours in excess of 40 they actually worked.

41. Throughout the three years preceding the filing of this lawsuit, Property Managers had similar responsibilities and performed common job duties, which required that they regularly work more than 40 hours a week to accomplish, but were not permitted by the Defendants to log more than

40 hours on their weekly timesheets.

42. A true and accurate copy of MACO's general job description applicable to all Property Managers titled "Duties/Responsibilities of Property Manager" is attached as <u>Exhibit A</u>.

43. Even though Defendants instruct their Property Managers they cannot report the overtime hours they work, they are required to work significant amounts of overtime in order to perform and accomplish their extensive job duties and responsibilities, or face discipline or discharge.

44. The job duties which Defendants assigned to and/or which were performed by its Property Managers during the three year period preceding the filing of this lawsuit through the present include, but are not limited to: showing units to potential residents; meeting with applicants; reviewing and maintaining applications; maintaining and updating applicant waiting lists; evaluating resident eligibility; preparing notices of incomplete applications and applicant rejection letters; maintaining permanent resident files; completing the verification process, including obtaining references from prior landlords, obtaining authorizations and completing paperwork for background checks, and completing income/asset verifications; supervising and overseeing the move-in process, including reviewing all paperwork, collecting security deposits and first month's rent, completing move-in walk through and checklist, and processing the completed paperwork; completing resident eligibility recertifications; overseeing the move-out process, including inspecting and documenting the condition of the unit, and completing the move-out checklist; collecting delinquent rent; conducting unit inspections; scheduling and overseeing pest control contractors; scheduling and overseeing contractors performing unit repairs; preparing for and participating in state agency

9

Case 2:18-cv-00082   Document 1   Filed 09/17/18   Page 9 of 18 PageID #: 9

inspections and investor inspections; directing the on-site maintenance person; performing maintenance chores such as cleaning and painting units; handling resident complaints and/or emergencies, accompanying police during on-site calls; and traveling (sometimes considerable distances) between the MACO properties to which they are assigned.

45. Plaintiff's job duties, work load and hours of work while working for Defendants as a Property Manager is typical of those of other Property Managers during the three year period prior to the filing of this lawsuit.

46. While working as a Property Manager for Defendants, Plaintiff typically worked much more than 40 hours per week, but was not paid at time and one-half her regular hourly rates as required by the FLSA for any of the overtime hours she worked.

47. Although she was paid hourly and her hours varied from week-to-week, the vast majority of Plaintiff's check stubs show that she was paid for working 40 hours each workweek (or 80 hours every 2 weeks) while she worked as a full-time Property Manager for Defendants, reflecting that Plaintiff was paid for none of the overtime hours she worked in accordance with Defendants' strict mandate that Property Managers report working only 40 hours and no overtime hours.

48. By way of example, for the two week pay period beginning Sunday, October 9, 2016 and ending Saturday, October 22, 2016, Plaintiff worked at least 62 hours the first week and 52 hours the second week of that pay period, but was only paid for working 40 hours each week, or 80 total for the pay period. A true and accurate copy of the pay stub issued to Plaintiff by the Defendants for the pay period of beginning Sunday, October 9, 2016 and ending Saturday, October 22, 2016, titled "Direct Deposit Voucher," is attached as Exhibit B.

49. As a result of Defendants' illegal "no overtime" policy, Property Managers throughout Defendants' operational territory generally reported working only 40 hours week-in and week-out, and were generally only paid for working 40 hours a week, during the three year period preceding the filing of this lawsuit.

## District Managers

50. Throughout most of the three year period prior to the filing of this lawsuit, Defendants paid District Managers an hourly wage and classified them as non-exempt employees who were eligible for overtime pay under the FLSA and/or various state laws.

51. Throughout the three year period prior to the filing of this lawsuit, MACO has enforced a strict "no overtime" policy precluding its employees from reporting the overtime they worked, and Defendants instructed their District Managers that they were not to report the hours they worked in excess of 37.5 hours in a workweek.

52. When District Managers are hired or promoted into that position, they are informed that their work schedule is 8 a.m. to 4:30 p.m., and that MACO does not pay overtime compensation, even though Defendants are well aware that the extensive duties placed on District Managers often require that they work in excess of forty hours in a workweek in order to satisfy their job duties and responsibilities.

53. Defendants instruct their District Managers that no matter how many hours they actually work, they cannot report that they worked more than 37.5 hours in a workweek.

54. As a result, throughout the three year period preceding the filing of this lawsuit,

11

District Managers were instructed to report that they worked from 8 a.m. to 4:30 p.m. Monday through Friday, with a daily 30 minute lunch break, for a total of 37.5 hours a week, no matter how many hours in excess of 40 they actually worked.

55. Throughout the three years preceding the filing of this lawsuit, District Managers had similar responsibilities and performed common job duties, which required that they regularly work more than 40 hours a week to accomplish, but were not permitted by the Defendants to log the actual hours they worked in excess of 40 hours on their timesheets.

56. Throughout the three years preceding the filing of this lawsuit, District Managers had similar responsibilities and performed common job duties, which required that they regularly work more than 40 hours a week to accomplish, but were not permitted by the Defendants to log more than 37.5 hours on their weekly timesheets.

57. A true and accurate copy of MACO's general job description applicable to all District Managers is attached as <u>Exhibit C</u>.

58. Even though Defendants do not allow their District Managers to report the overtime hours they work, Defendants require District Managers to work significant amounts of overtime in order to perform and accomplish their extensive job duties and responsibilities, or face discipline or discharge.

59. The job duties which Defendants assigned to and/or which were performed by its District Managers during the three year period preceding the filing of this lawsuit through the present include, but are not limited to: overseeing the overall operation of all multi-family complexes within their district; hire, train, supervise, and terminate site staff as necessary; analyzing property financial

statements and preparing annual operating budgets; preparing monthly, quarterly, and annual financial reports; reviewing, approving and coding all property expenditures/bills; preparing all required regulatory agency documents including management plans, management certifications, affirmative fair housing marketing plans, marketing letters, advertisements, and identity of interest disclosures; making regular site visits to complexes for compliance inspections; ensuring compliance with all federal, state, and local laws and regulations including tenant eligibility, non-discrimination, grounds, and health and safety matters; acting as liaison with all governing agencies and attending inspections; preparing responses to agency reports; scheduling and conducting team meetings; and preparing employee evaluations.

60. Plaintiff's job duties, work load and hours of work while working for Defendants as a District Manager is typical of those of other District Managers during the three year period prior to the filing of this lawsuit.

61. While working as a Property Manager for Defendants, Plaintiff typically worked much more than 40 hours per week, but was not paid at time and one-half her regular hourly rates as required by the FLSA for any of the overtime hours she worked.

62. Although she was paid hourly and her hours varied from week-to-week, the vast majority of Plaintiff's check stubs show that she was paid for working 37.5 hours each workweek (or 75 hours every 2 weeks) while she worked as a full-time District Manager for Defendants, reflecting that Plaintiff was paid for none of the overtime hours she worked in accordance with Defendants' strict mandate that District Managers report working only 37.5 hours and no overtime hours.

63. By way of example, for the two week pay period beginning Sunday, June 3, 2018 and

13

ending Saturday, June 16, 2018, Plaintiff worked at least 70 hours during the first week of that pay period, but was only paid for working 37.5 hours that week. A true and accurate copy of the pay stub issued to Plaintiff by the Defendants for the pay period of beginning Sunday, June 3, 2018 and ending Saturday, June 16, 2018, titled "Direct Deposit Voucher," is attached as Exhibit D.

64. On Friday, June 8, 2018, Plaintiff started working at MACO's Crossville Regional Office at 6:00 a.m., and continuously worked for 17.25 straight hours until 12:17 a.m. on the morning of Saturday, June 9, 2018. Because of the exhaustive hours Plaintiff was required to work, the requirement that she and other MACO employees report no overtime hours on their timesheets, and because her prior complaints about working long hours without overtime compensation had been ignored by Defendants, Plaintiff resigned on June 9, 2018. In her resignation letter, which she drafted at 12:17 a.m. on June 9, 2018, Plaintiff stated: "I would hope that I would be compensated for the 72 hour work week that I put in this week verses the 37.5 hour[s] that I am paid." A true and accurate copy of Plaintiff's resignation letter is attached as Exhibit E.

65. As a result of Defendants' illegal "no overtime" policy, District Managers throughout Defendants' operational territory generally reported working only 37.5 hours week-in and week-out, and were generally only paid for working 37.5 hours a week, during the three year period preceding the filing of this lawsuit.

## V. SCOPE OF DEFENDANTS' LIABILITY

66. There are other similarly-situated present and former employees of Defendants who worked as Property Managers and District Managers who have been improperly compensated and deprived of their lawful overtime pay in violation of the FLSA and who would benefit from the issuance of court-supervised notice of the present action. Those similarly-situated employees are known to Defendants and are readily identifiable and locatable through Defendants' records. Specifically, all current and former hourly-paid employees should be notified who, at any time during the three years preceding the filing date of this Complaint, up through and including the date of this Court's issuance of court-supervised notice, have worked as Property Managers and/or District Managers.

67. Throughout the recovery period applicable to this action, Defendants Maddox and Thompson exercised operational control over the business activities and operations of MACO, including control over the terms and conditions of employment of their hourly-paid Property Managers and District Managers.

68. In particular, Defendants Maddox and Thompson directed and controlled work performed by the Plaintiff and all similarly-situated Property Managers and District Managers who worked for them, or had the right to direct and control their work.

69. During the recovery period applicable to this action, Defendants Maddox and Thompson and implemented, approved, and/or ratified the illegal policies and practices set forth and described above and were fully aware that such policies and practices violated the law.

70. Upon information and belief, Defendants Maddox and Thompson personally profited

through bonuses and/or increased compensation as a result of the illegal policies and practices set forth and described above.

70. Accordingly, Defendants Maddox and Thompson acted "directly or indirectly in the interest of an employer in relation to" the named Plaintiff and similarly-situated Property Managers and District Managers within the meaning of §203(d) of the FLSA, and are thus individually and personally liable for the unpaid wages, liquidated damages, costs and attorneys' fees, and all other relief sought herein.

## VI. COUNT ONE

72. Plaintiff repeats and incorporates by reference the allegations contained in Paragraphs 1-72 herein. By their actions alleged herein, Defendants willfully, knowingly, and/or recklessly violated the provisions of the FLSA and corresponding federal regulations.

73. Defendants willfully and intentionally engaged in a widespread pattern and practice of violating the overtime provision of the FLSA, as detailed herein, by endeavoring to obstruct and prevent the proper compensation of Plaintiff and other present and former, similarly-situated Property Managers and District Managers in accordance with §207 of the FLSA.

74. As a result of Defendants' violations of the FLSA, Plaintiff, as well as all other similarly-situated Property Managers and District Managers, have suffered damages by failing to receive their lawful overtime wages in accordance with §207 of the FLSA.

75. Defendants have made no good faith efforts to comply with the FLSA with respect to their compensation of Plaintiff or other similarly-situated Property Managers and District Managers.

76. Defendants' willful conduct is evidenced by its treatment of Plaintiff and similarly-

situated Property Managers and District Managers as set forth and described above.

77. As a result of the unlawful acts of Defendants, Plaintiff and all other similarly-situated Property Managers and District Managers have been deprived of their rightful hourly and/or overtime compensation in an amount to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and all other compensation and relief permitted by applicable law.

78. Pursuant to 29 U.S.C. §216(b), a Consent to participate in this action signed by the Plaintiff is attached hereto as Exhibit F.

## VII. PRAYER FOR RELIEF

79. WHEREFORE, the named Plaintiff, individually and on behalf of all other similarly-situated Property Managers and District Managers, pursuant to §216(b) of the FLSA, prays for the following relief:

A. That at the earliest possible time, she be allowed to give notice, or that the Court issue such notice, to all persons who are presently, or have at any time during the three years immediately preceding the filing of this suit, up through and including the date of this Court's issuance of court-supervised notice, been employed as hourly Property Managers and District Managers for the Defendants. Such notice shall inform them that this action has been filed, the nature of the action, and of their right to opt into this lawsuit pursuant to 29 U.S.C. §216(b).

B. That the Plaintiff, and all similarly-situated Property Managers and District Managers, be awarded damages in the amount of their respective unpaid compensation, plus an equal amount of liquidated damages and/or prejudgment interest;

17

C. Reasonable attorneys' fees;

D. The costs and expenses of this action; and

E. Such other, further legal and equitable relief, including but not limited to, any injunctive and/or declaratory relief to which they may be entitled.

HOWELL LAW, PLLC

/s/ Trevor Howell
Trevor Howell, TN Bar # 9496
161 Rosa Parks Blvd
Nashville, Tennessee 37203
Tel.: 615.244.4994
Trevor@howelllawfirmllc.com


DICKINSON WRIGHT PLLC

/s/ Autumn Gentry
Autumn L. Gentry, TN Bar #20766
Peter F. Klett, TN Bar #12688
Fifth Third Center
424 Church Street, Suite 800
Nashville, TN 37219-2392
Tel.: 615.244.6538
pklett@dickinsonwright.com
agentry@dickinsonwright.com

NASHVILLE 80793-1 658555v1