# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| **TAMI SMITH, individually and on behalf of all those similarly situated,** | ) ) ) | |
| **Plaintiffs,** | ) ) | |
| | ) | **NO. 2:18-cv-00082** |
| **v.** | ) | **CHIEF JUDGE CRENSHAW** |
| | ) | |
| **MACO MANAGEMENT COMPANY, INC., et al.,** | ) ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

Pending before the Court in this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*., is Tami Smith's Motion For Conditional Certification Of This Matter As A Collective Action And Approval of 29 U.S.C. § 216(b) Notice. (Doc. No. 33.) Maco Management Company, Inc. ("Maco") has responded in opposition (Doc. No. 35), to which Smith has replied (Doc. No. 37). Additionally, Maco has filed a Motion to Strike certain portions of Smith's supporting declarations. (Doc. No. 36.) Smith opposes Maco's Motion to Strike in her conditional certification reply. (See Doc. No. 37 at 22.) For the reasons stated below, Maco's Motion to Strike (Doc. No. 36) will be denied, and Smith's motion for conditional certification will be granted.

## I.     Factual Background

The named plaintiff, Tami Smith ("Named Plaintiff") is a former employee of Maco. (Doc. No. 1 at 3.) Maco is a privately-owned company that provides property management services for low income multi-family housing units and apartments in ten states, including Arkansas, Illinois, Indiana, Kansas, Kentucky, Mississippi, Missouri, Nebraska, Oklahoma, and Tennessee. (Id. at 4.) To manage these housing and apartment units, Maco employs a variety of hourly, non-exempt

employees, including Property Managers ("PM"), who report to District Managers ("DM"). (Id. at 3.) Named Plaintiff alleges that job duties for PMs include meeting with and showing units to potential residents, reviewing and maintaining residential applications, supervising residents' moves, collecting rent, and generally maintaining Maco's apartment and housing units. (Id. at 9-10.) For DMs, job duties include overseeing the overall operation of all multi-family complexes within the assigned district, hiring, training, and firing staff as necessary, preparing financial reports, ensuring governmental compliance, and scheduling and conducting team meetings. (Id. at 13.) Named Plaintiff, who was initially employed as PM and then promoted to a DM, alleges that, to control labor costs, Maco engaged in a practice of "time-shaving" whereby both DMs and PMs who worked in excess of 40 hours a week were instructed not to record their excess hours. (Id. at 10-14.) Accordingly, in the instant suit, Named Plaintiff seeks to represent two classes of persons consisting of:

> All current and former individuals who, at any time since September 17, 2015, are or were employed or hired as, or held the position of "Property Manager" (or those who performed similar duties by any other title such as "Site Manager") at Maco at any of its locations nationwide ("Nationwide Property Manager Class").

> All current and former individuals who, at any time since September 17, 2015, are or were employed or hired as, or held the position of "District Manager" (or those who performed similar duties by any other titled such as "Property Manager") at Maco at any of its locations nationwide ("Nationwide District Manager Class").

(Doc. No. 33 at 1.)

On January 15, 2019, Named Plaintiff filed the instant motion for conditional certification. (Id.) In support of the motion, Named Plaintiff filed her own declaration, and also filed "representative" declarations from two other persons, Kimberly Smith and Anita Hurley. All three of these putative collective members were: (1) employed in Maco's Crossville, Tennessee office; and (2) served as both PMs and, later, DMs at Maco. (See Doc. Nos. 33-3, 33-4, 33-5.) Named

Plaintiff asks the Court to: (1) conditionally certify the proposed collective; (2) order Maco to produce the names, last known mailing addresses, last known telephone numbers, and last known email addresses for all putative collective members; (3) approve the proposed Notice and Consent forms; (4) approve direct issuance of the proposed Notice and Consent forms to all putative opt-in plaintiffs by mail and email and direct Maco to internally post the forms prominently and enclose them in the next regularly scheduled paycheck for currently employed putative opt-in plaintiffs; and (5) equitably toll the statute of limitations of the putative opt-in plaintiffs' FLSA claims. (Doc. No. 33 at 3.)

## II.     Conditional Certification

### A.     FLSA Certification Standard

The FLSA generally requires that employers pay employees specified minimum hourly rates for up to 40 hours per week, and pay overtime compensation at one and one half times the regular rate for hours worked in excess of 40 hours in a week.  29 U.S.C. § 207.  To enforce this provision, an aggrieved employee may bring a collective action on his own behalf, and on behalf of all those who are similarly situated and who opt in by giving consent in writing to become a party. 29 U.S.C. § 216(b).

Lead plaintiffs bear the burden of showing that opt-in plaintiffs are similarly situated.  Frye v. Baptist Mem'l. Hosp., Inc., 495 F. App'x 669, 671 (6th Cir. 2012). The FLSA does not define the term "similarly situated." The Sixth Circuit has noted that courts have considered the factual and employment settings of the individual plaintiffs, the different defenses to which the plaintiffs may be subject on an individual basis, and the degree of fairness and procedural impact of certifying the action as a collective action. O'Brien v. Ed Donnelly Enters., 575 F.3d 567, 584 (6th Cir. 2009), abrogated on other grounds, Campbell-Edwald Co. v. Gomez, 136 S. Ct. 663, 670

(2016). "[I]t is clear that plaintiffs are similarly situated when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." Id. at 585. But employees may also be similarly situated if their claims are merely "unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." Id. Indeed, "[s]howing a 'unified policy' of violations is not required [for certification]." Id. at 584. For example, in O'Brien, the Sixth Circuit stated that even a requirement that employees' "causes of action under the FLSA accrued at about the time and place in the approximate manner of the named plaintiff" would be "more demanding than what the [FLSA] requires." Id. at 585.

Where, as here, the request is made early in the case and prior to significant discovery, the standard is "fairly lenient," and requires only "a modest factual showing" that "typically results in conditional certification of a representative class." Comer v. Wal-Mart Stores, Inc., 454 F.3d 544, 547 (6th Cir. 2006) (quoting Pritchard v. Dent Wizard Int'l Corp., 210 F.R.D. 591, 594 (S.D. Ohio 2002); Morisky v. Pub. Serv. Elec. & Gas Co., 111 F. Supp. 2d 493, 497 (D. N.J. 2000)). In meeting this burden, substantial allegations supported by declarations are "all that is required." White v. MPW Indus. Servs., Inc., 236 F.R.D. 363, 373 (E.D. Tenn. 2006). At this first stage of conditional certification, the court "does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." Roberts v. Corr. Corp. of Am., No. 3:14-cv-2009, 2015 WL 3905088, at *10 (M.D. Tenn. Jun. 25, 2015) (citing Brasfield v. Source Broadband Servs., LLC, 257 F.R.D. 641, 642 (W.D. Tenn. 2009)). If the named plaintiffs show that employees in the proposed class are similarly situated, "[t]he district court may use its discretion to authorize notification of similarly situated employees to allow them to opt into the lawsuit." Comer, 454 F.3d at 546. "At the second stage, following discovery, trial courts examine more closely the

question of whether particular members of the class are, in fact, similarly situated" because "the court has much more information on which to base its decision and, as a result, [it] employs a stricter standard." Id. (quoting Morisky, 111 F. Supp. 2d at 497).

**B.      Plaintiffs' Declarations and Defendants' Motion to Strike**

In support of the motion for conditional certification, Named Plaintiff submitted three total declarations from herself and two former DM/PMs, each stating that they were forced, at the direction of Maco and the individual defendants, to manipulate their "hours worked" through time-shaving. (See Doc. Nos. 33-3 at 4-7, 33-4 at 3-7, 33-5 at 4-7.) The declarations all contain similar factual allegations—namely, that they routinely were forced to engage in time-shaving by not recording their actual working hours. (Doc. Nos. 33-3 at 4-7, 33-4 at 3-7, 33-5 at 4-7.) For example, Tami Smith states that, while employed as a PM, she was instructed to report her hours worked as 8:00 a.m. to 5:00 p.m., with a one-hour lunch break, no matter how many hours in excess of 40 she actually worked. (Doc. No. 33-3 at 4.) She further declares that certain higher-up employees told her that "corporate" did not allow PMs to record over 40 hours per week on their timesheets regardless of how many hours were actually worked. (Id.) Smith declares that this same policy was in effect even when she was promoted to be a DM (i.e., even as a DM she was forced to engage in time-shaving). (Id. at 6-7.) Kimberly Smith and Anita Hurley's declarations contain substantially similar statements. (See Doc. Nos. 33-3 at 4-6, 33-5 at 4-6.)

In response, Maco argues that the submitted declarations are insufficient to certify a nationwide class. (Doc. No. 35 at 5-6.) Maco contends that these three declarations, all of which are isolated to a single geographic location, are insufficient to show a "nationwide" policy or practice. (Id. at 6.) Further, relying on this Court's prior decision in Peer v. Grayco Mgmt. LLC, Case No. 3:16-cv-01578, 2017 WL 2403269, at *4 (M.D. Tenn. Jun. 2, 2017), Maco contends that

three declarations are insufficient to support any type of conditional certification. (Id.) Additionally, Defendants have filed a Motion to Strike, seeking to exclude certain statements from the declarations regarding conversations Named Plaintiff, Smith, and Hurley had with other, non-Tennessee Maco DMs and PMs. (See Doc. No. 36.)

To the extent Maco relies on Peer to oppose any form of class certification, that reliance is misplaced. The Court's opinion in Peer specifically explained that the plaintiff "sought certification based solely on his own declaration and it was an open question whether the allegations of a single plaintiff [were] sufficient to meet the minimal burden for conditional certification." 2017 WL 2403269, at *5 (emphasis added). In contrast, here, Named Plaintiff has offered the declarations of two other employees. (Doc. Nos. 33-4, 33-5.) Accordingly, Peer is inapposite.

Moreover, the Court finds that Defendants' Motion to Strike is inappropriate at this juncture. As noted, in the Motion to Strike, Defendants seek to exclude certain statements in the declarations regarding conversations Named Plaintiff, Smith, and Hurley had with other Maco employees working in non-Tennessee locations. (Doc. No. 36 at 1-5). Named Plaintiff, Smith, and Hurley all stated in their declarations that they had conversations with other Maco employees working at non-Tennessee locations, who informed them that they too were consistently working more than 40 hours a week without overtime compensation due to Maco's "corporate" policy. (See Doc. Nos. 33-3 at 4, 33-4 at 5-7, 33-5 at 7). Defendants seek to strike these statements because they constitute inadmissible hearsay. (Doc. No. 36 at 3.) Defendants argue that other courts have stricken similar statements on conditional class certification motions, but acknowledge that, in the past, this Court has preferred a more lenient approach. (Id.) Plaintiffs urge this Court to again employ a more lenient approach and deny Defendants' Motion to Strike. (Doc. No. 37 at 19-20.)

The Court acknowledges that there have been a variety of approaches to handling this issue. Compare Sisson v. OhioHealth Corp., Case No. 2:13-cv-0517, 2013 WL 6049028, at *6 (S.D. Ohio Nov. 14, 2013) (declining to consider knowledge gained through hearsay); Harrison v. McDonald's Corp., 411 F. Supp. 2d 862, 866 (S.D. Ohio 2005) (holding that only admissible evidence may be considered); with Rogers v. HCA Health Servs. of Tenn., Inc., Case No. 3:09-cv-1173, 2013 WL 3224026, at *2 (M.D. Tenn. June 25, 2013) (considering hearsay, because "at the conditional certification stage, the Court is not concerned with the admissibility of evidence; rather, it looks for some factual basis from which it can determine if similarly situated plaintiffs exist") (internal quotation omitted); Watson v. Advanced Distrib. Serv., LLC, 298 F.R.D. 558, 563 (M.D. Tenn. 2014) ("Here, the court will apply the more lenient approach, as it did in Rogers."); Jesiek v. Fire Pros. Inc., 275 F.R.D. 242, 247 (W.D. Mich. 2011) ("A conditional certification motion does not seek final disposition of the action on the merits, unlike a summary judgment motion, and therefore requiring all evidence for consideration to be admissible has no logical basis."); White, 236 F.R.D. at 367–68 ("To require more at this stage of litigation would defeat the purpose of the two-stage analysis.").

Here, as in Rogers and Watson, the Court will apply the more lenient approach. As noted in Watson, the Court's consideration of potential hearsay is relevant only to the Court's preliminary inquiry into the propriety of conditional certification. 298 F.R.D. at 563. "Unlike a summary judgment motion, this inquiry is not dispositive of the merits of the case, and the Court need not admit documents into evidence to determine whether there is a 'modest factual showing' of substantial similarity to justify providing notice to the [potential class members]." Id. However, "affidavits submitted at the notice stage must be based on the personal knowledge of the affiant [because] [i]f the Court were to conclude otherwise, affidavits submitted would not be any more

probative than the bare allegations in the complaint, and the requirement of factual support would be superfluous." White, 236 F.R.D. at 369. In the instant case, the statements in the declarations are all based on the personal knowledge of the declarants, and, therefore, Defendants' Motion to Strike will be denied.

### C.    Whether the Prospective Collective Action Plaintiffs Are Similarly Situated

In totality, the three declarations all allege that Maco's employment practices, at both the PM and DM levels, sought to control labor costs (through a top-down "corporate" time-shaving policy) in violation of the FLSA. These declarations uniformly show (1) employment with Maco; (2) the job title for which certification is sought; (3) performance of similar job duties under each job title; (4) payment of wages; (5) work performed in excess of forty hours per week without overtime compensation by Maco; and (6) job duties and requirements that do not meet the requirements of any exemptions to the FLSA. (See Doc. Nos. 33-3, 33-4, 33-5.) The Court finds that, at bare minimum, the claims are "unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." O'Brien, 575 F.3d at 585. Accordingly, the Court finds that Plaintiffs are similarly situated for purposes of certification of the proposed class.

In opposition, Maco argues that, if the Court certifies the class, unavoidable conflicts will arise out of Named Plaintiff's assertion of claims on behalf of, and attempts to represent, both PMs and DMs (who supervise PMs). (Doc. No. 35 at 2.) Maco argues that, under Named Plaintiff's class definition, potential opt-in plaintiffs could both: (1) qualify to join the suit as an opt-in plaintiff; and (2) be a potential defendant in the action (i.e., an opt-in plaintiff could be a DM, who was a former PM, and instructed other opt-in plaintiffs, who were PMs, to engage in time-shaving). (Id. at 3.) Maco notes that Named Plaintiff and the other declarants themselves admit that, as DMs,

they enforced the alleged unlawful policy at issue, and, therefore could also be potential defendants in the action. (Id.) As a result, Maco argues that Named Plaintiff and the other declarants have directly implicated themselves as wrongdoers—and potential individual defendants—in claims asserted by putative opt-in PMs who reported to them during the relevant period. (Id. at 4.)

Maco's "conflict of interest" argument, although not without intellectual appeal, does not defeat Named Plaintiff's conditional certification motion. The Court is not persuaded that an inherent conflict of interest precludes a finding that PMs and supervising DMs are similarly situated. Other courts faced with similar facts have approved motions for conditional certification of proposed classes that include both supervisors and their supervisees. See, e.g., Garcia v. Moorehead Communications, Inc., Case No. 1:12–CV–208–JD, 2013 WL 4479234, at *4 (N.D. Ind. Aug. 19, 2013) (finding technicians and their supervisor field service managers were similarly situated); Aguilar v. Complete Landsculpture, Inc., Case No. 3:04–CV–0776-D, 2004 WL 2293842, at *4 (N.D. Tex. Oct. 7, 2004) (foremen with hiring and firing authority similarly situated to laborers where all employees were compensated under the same pay scheme); Pacheco v. Aldeeb, Case No. 5:14–cv–121–DAE, 2015 WL 1509570, at *6 (W.D. Tex. Mar. 31, 2015) (fact that some plaintiffs served in managerial capacity is not, alone, sufficient to preclude them from representing non-managerial employees).

Maco relies on three cases in support of its conflict of interest argument: (1) Ellred v. Cnty. of Los Angeles, Case No. CV-08-4289-CAS-FFMx, 2009 WL 982077, at *5 (C.D. Cal. Apr. 9, 2009); (2) White v. Osmose, Inc., 204 F. Supp. 2d 1309, 1314-15 (M.D. Ala. 2002); and (3) Bentley v. Cnty of L.A., Case No. CV 09-02063-RGK-CWx, 2009 WL 10674394, at *3 (C.D. Cal. 2009). In all three cases, the district courts did not allow for certification of the proposed classes because they included both supervisors and their supervisees. See White, 204 F. Supp. 2d at 1314-

15 (refusing to certify proposed class because foremen and crewmen had dissimilar job duties and there was an inherent conflict between them because foremen were responsible for reporting the correct number of hours worked by crewmen and foremen received bonuses for efficiency); Ellred, 2009 WL 982077, at *5 (refusing to certify proposed class of social workers and their supervisors because an inherent conflict existed between the parties as the social workers would have to prove that their supervisors violated federal law by telling the social workers not to record their overtime); Bentley, 2009 WL 10674394, at *3 (refusing to certify class based on analysis in Ellred). The Court finds that there are obvious factual differences between Ellred, White, and Bentley and the case at bar.

Unlike in Ellerd, White, and Bentley, there is no indication at this point that the success of putative plaintiffs who were former PMs will rest on their ability to prove that DMs acted illegally. Here, Plaintiffs allege that they are victims of illegal pay policies that originated from the corporate headquarters and DMs were enforcing that corporate policy. Specifically, Plaintiffs allege: (1) "Maco has enforced a strict 'no overtime' policy precluding its employees from reporting the overtime they worked, and Defendants instructed their District Managers and Regional Managers that they were not to allow Property Managers to report the hours they worked in excess of 40 hours in a workweek;" and (2) "Maco has enforced a strict 'no overtime' policy precluding its employees from reporting the overtime they worked, and Defendants instructed their District Managers that they were not to report the hours they worked in excess of 37.5 hours in a workweek." (Doc. No. 1 at 8, 11.) DMs had no financial incentive to encourage PMs to under-report their hours because Maco was allegedly not paying overtime to either PMs or DMs. Rather, the supporting declarations allege that DMs and PMs are equal victims of Maco's "corporate" overtime pay policies and procedures. (Doc. Nos. 33-3 at 4-6, 33-4 at 4-6, 33-5 at 4-6.) Indeed,

both DMs and PMs performed similar duties involving the maintenance and oversight of Maco's assigned properties. Because Ellerd, White, and Bentley are readily distinguishable from the present case, the Court finds that there is no inherent conflict of interest.

Finally, although not explicitly contained in its brief, to the extent that Maco relies on the differences between the declarants' experiences, the Court does note that "disparate factual and employment settings of the individual plaintiffs" are particular issues that are "appropriately examined under the second stage of the [certification] analysis" (i.e., in a motion for decertification), rather than at the motion for certification stage. White, 236 F.R.D. at 373 (citing Thiessen v. Gen. Elec. Capital Corp., 267 F.3d 1095, 1103 (10th Cir. 2001)). Further, "once [p]laintiffs have met their burden at the notice stage, [d]efendant[s] cannot overcome [p]laintiff[s'] showing by arguing that individual issues may dominate; rather, if, after notice to the putative plaintiffs it appears that individual issues do in fact dominate, the [d]efendant[s] may move the [c]ourt to decertify the class." Id.

### D.      Conclusion

For these reasons, the Court will grant the Named Plaintiff's motion for conditional certification. See, e.g., Roberts, 2015 WL 3905088, at *13 (granting motion for conditional certification, despite a variety of employee positions and circumstances involved, where the plaintiffs had made a broad "modest factual showing" that they worked in excess of forty hours per week at various correctional facilities without receiving overtime pay); Miller v. Lebanon Golf & Country Club, No. 3:14–CV–01099, 2014 WL 7359003, at *4 (M.D. Tenn. Dec. 23, 2014) (granting motion for conditional certification where the plaintiffs had met the "low bar" by invoking the common, specific statutory theory that they worked in excess of forty hours per week at a country club without receiving overtime pay); Benson v. Asurion Corp., No. 3:10-cv-526,

11

2010 WL 4922704, at *4 (M.D. Tenn. Nov. 29, 2010) (granting motion for conditional certification and noting that, even if evidence submitted by the defendant tends to contradict the plaintiffs' evidence or reveal potential weaknesses in their case, it did not preclude conditional certification if the plaintiffs' evidence suggested, at a minimum, that some hourly employees performed uncompensated pre- and post-shift tasks).

In granting conditional certification, the Court finds that Named Plaintiff's request for certification of a nationwide collective action that extends to all states in which Maco operates is appropriate and would serve the interests of justice and efficiency. Although Named Plaintiff has filed only three declarations (including her own), all of which are limited to Maco's Crossville, Tennessee location, the declarations detail a top-down "corporate" policy of time-shaving, which has allegedly affected other, non-Tennessee Maco locations. (See Doc. Nos. 33-3, 33-4, 33-5.) There is sufficient evidence of a common companywide practice whereby PMs and DMs are forced to engage in time-shaving in violation of the FLSA such that a nationwide class is appropriate. White, 236 F.R.D. at 373 (in meeting the class certification burden, substantial allegations supported by declarations are "all that is required"). Simply put, Named Plaintiff has put forward enough evidence of common nationwide practices whereby PMs and DMs are forced to engage in "off-the-clock" work in violation of the FLSA to support a nationwide class.

III.     **Proposed Notice Protocol and Disclosure of Potential Plaintiffs**

In effecting class certification, there remains multiple questions of the class definition, Notice and Consent Forms, how they are to be disseminated, and whether the statute of limitations should be equitably tolled for putative class members. First, Maco argues that Named Plaintiff's class definitions are too broad and the class definitions should be tailored to reflect the exact job titles at issue in the case: (1) PMs; and (2) DMs. (Doc. No. 35 at 14.) Maco contends that, despite

the clarity of the PM and DM job titles, "the proposed definition for the putative 'Nationwide Property Manager Class' includes a third, previously-unidentified job title, 'Site Manager,' without any explanation." (Id.) "Similarly, the proposed definition for the putative 'Nationwide District Manager Class' inexplicably includes 'Property Managers,' despite a completely separate proposed class for Property Managers." (Id.)

The Court believes that Named Plaintiff's proposed class definitions are sufficiently curtailed and well-defined. The proposed class definitions specifically limit the universe of putative class members to those persons who held the title of PM or DM or an identical role that was simply differently titled. (See Doc. No. 33 at 1.) Given the "broad and remedial purpose" of the FLSA, the Court finds that the Named Plaintiff's class definition is necessary to achieve the FLSA's statutory intent. See Ruggles v. WellPoint, Inc., 591 F. Supp. 2d 150, 158 (N.D.N.Y. 2008) (holding that FLSA has statutory intent to facilitate a broad remedial purpose, to expedite disposition of the action because of the relatively short statute of limitations, and to promote efficient case management). Additionally, to the extent that Maco seeks to limit Named Plaintiff's proposed class to the timeframe of August 2017 to April 2018 because it "properly reclassified its District Managers as exempt in April 2018 so individuals who work or worked for Maco as District Managers after April 2018 have no viable claim," (Doc. No. 35 at 14), this involves a fact-intensive determination that the Court will not resolve at this juncture. Brasfield, 257 F.R.D. at 642 (holding that, at this point, the Court "does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations.")

Second, Maco argues that Named Plaintiff's request for equitable tolling should be denied. (Doc. No. 35 at 15.) Named Plaintiff requests equitable tolling for "FLSA claims of the putative opt-in plaintiffs through the close of the period during which the putative opt-in plaintiffs may join

this action." (Doc. No. 34 at 15.) The Court agrees that there is no basis for granting Named Plaintiff's blanket equitable tolling request.

FLSA claims are governed by a two-year statute of limitations or, in the case of a "willful violation," a three-year statute of limitations. 29 U.S.C. § 255(a). The statute of limitations is not tolled for any individual class member until that individual has filed a "written consent to join form" with the court. 29 C.F.R. § 790.21(b)(2). The information contained in a notice form is, therefore, important to allow a prospective plaintiff to understand his or her interests and a collective action hinges on "employees receiving accurate and timely notice concerning [its] pendency . . . so that they can make informed decisions about whether to participate." Hoffmann–LaRoche Inc. v. Sperling, 493 U.S. 165, 170 (1989).

"While equitable tolling is potentially available in an FLSA case, the doctrine is to be carefully applied." Montgomery v. Decatur Cnty. Gen. Hosp., Case No. 11-1096, 2012 WL 13041427, at *10 (W.D. Tenn. Mar. 19, 2012) (citing Knispel. v. Chrysler Grp. LLC, No. 11-11886, 2012 WL 553722, at *6 (E.D. Mich. Feb. 21, 2012)). To determine whether to apply equitable tolling to time-barred claims, courts consider: (1) the petitioner's lack of notice of the filing requirement; (2) the petitioner's lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim. Id. "There has been some question, however, concerning the suitability of this test for application to yet unidentified potential plaintiffs." Id. (citing Matthews v. ALC Partner, Inc., Case No. 2:08-cv-10636, 2009 WL 2591497, at *8 (E.D. Mich. 2009)). Accordingly, the Court in Montgomery declined to grant the same equitable tolling relief sought by Named Plaintiff in this case. See id. The Court reaches the same conclusion. The Court further notes that, if and when any putative

14

plaintiffs whose claims would otherwise be time-barred choose to opt-in to the class, they can individually move for equitable tolling relief. Id.

Moreover, Maco argues for certain revisions to Named Plaintiff's proposed Notice and Consent Form, including that putative opt-in plaintiffs should be informed of potential litigation costs. (Doc. No. 35 at 21-22.) After review, the Court confirms that the proposed Notice and Consent Form is not atypical of those have issued in the past. Nevertheless, courts commonly require the parties to confer about the language to be included in the Notice and Consent Form, with the goal being to reach an agreement. See Patton v. ServiceSource Delaware, Inc., No. 3:15-01013, 2016 WL 4441424, at *4 (M.D. Tenn. Aug. 23, 2016) (observing that "it makes sense that the parties be allowed an opportunity to negotiate the language," and stating that "[t]he parties should make every effort to agree on the Proposed Notice and Consent Forms and not squander this opportunity because it is unlikely that the Court will meld competing notices, rather than choose one form over the other."); Miller v. Jackson, No. 3:10-1078, 2011 WL 1060737, at *8 (M.D. Tenn. Mar. 21, 2011) (observing there was nothing "alarming about the proposed Notice and Consent forms," but requiring the parties to "meet and confer in good faith regarding these issues"). Accordingly, the parties will be ordered to meet and confer to come to an agreement about the Notice and Consent form's language. If the parties are unable to reach agreement, they shall notify the Court and it will choose one version.

Named Plaintiff also requests that the Court order Maco to produce the names, last known mailing addresses, last known telephone numbers, and last known email addresses for all putative collective members. (Doc. No. 34 at 12.) Maco opposes Named Plaintiff's broad request for this information. (Doc. No. 35 at 19.) As to the means of dissemination, Named Plaintiff requests that the Notice and Consent forms be sent via first class mail and email, and that they also be enclosed

with the regularly scheduled paycheck for potential members of the putative collective and posted at Maco's offices. (Doc. No. 35 at 13-14.) Named Plaintiff also proposes a 90-day notice period. (Id. at 30.) Maco opposes all of Named Plaintiff's suggested means of dissemination. (Doc. No. 35 at 18-22.)

Although support can be found for each parties' position, "courts within the Sixth Circuit have routinely approved dual notification through regular mail and email." Evans v. Caregivers, Inc., No. 3:17-cv-0402, 2017 WL 2212977, at *7 (M.D. Tenn. May 19, 2017) (citing Williams v. King Bee Delivery, LLC, No. 5:15-cv-306, 2017 WL 987452, at *7 (E.D. Ky. Mar. 14, 2017); Fenley v. Wood Grp. Mustang, Inc., 170 F. Supp. 3d 1063, 1074 (S.D. Ohio 2016)). "They also have required that employers post the notice at a conspicuous location in their facilities . . . and provide copies with employees paychecks[.]" Id. (citing Jowers v. NPC Int'l, Inc., No. 13-1036, 2016 WL 7238963, at *8 (W.D. Tenn. Dec. 13, 2016); Brown v. Consol. Rest. Operations, Inc., No. 3:12-00788, 2013 WL 4804780, at *7 (M.D. Tenn. Sept. 6, 2013)). In the absence of any showing of prejudice, and because the FLSA requires that putative collective members be provided with notice of this lawsuit and apprised of their rights, the Court will approve the dissemination of Notice in the manner requested by Named Plaintiff. However, the Court agrees with Maco that a 45-day period is sufficient for potential opt-in plaintiffs to receive notice and make their decision. See Watson, 298 F.R.D. at 565 (holding that, where plaintiffs requested 90 days for potential opt-in plaintiffs to opt into the lawsuit and the defendants requested that the time frame be more limited, a 45-day opt-in period was appropriate).

## IV.     Conclusion

On the basis of the foregoing, the Court will conditionally certify this matter as a collective action, and Maco will be required to furnish Named Plaintiff's counsel with a list of the putative

class members that includes last known physical and email addresses. The parties will be provided

with an opportunity to reach agreement as to the Notice and Consent Form.

An appropriate Order will enter.

WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE