IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| TAMI SMITH, RANDI LAVERY, ANNA THURMAN, and SANDRA SWAIN, individually and on behalf of all similarly-situated persons, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 2:18-CV-00082 |
| vs. | ) ) | Judge Waverly D. Crenshaw, Jr. |
| MACO MANAGEMENT COMPANY, INC., and JAMES K. MADDOX and KATRINA THOMPSON, individually, | ) ) ) ) | Magistrate Judge Alistair Newbern |
| Defendants. | ) ) | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR UNOPPOSED MOTION
FOR COURT APPROVAL OF FLSA §216(b) COLLECTIVE ACTION SETTLEMENT**

Plaintiffs Tami Smith, Randi Lavery, Sandra Swain, and Anna Thurman ("Plaintiffs"), through undersigned Class Counsel,[1] Dickinson Wright PLLC and Howell Law PLLC, submit this Memorandum in Support of their Unopposed Motion for Court Approval of FLSA §216(b) Collective Action Settlement. For the reasons set forth herein, Plaintiffs submit that the Parties' Settlement Agreement is fair, adequate, and reasonable, and therefore, request that the Court approve it.

## I. INTRODUCTION

In September of 2018, Plaintiff Tami Smith, on behalf of herself and all others similarly-situated, filed a Complaint in the United District Court for the Middle District of Tennessee, case No. 2:18-CV-00082, against Defendants MACO Management Company, Inc., James K. Maddox, and Katrina Thompson ("Defendants"), for violations of the overtime provision of the Fair Labor

---

[1] The terms used herein bear the same meaning as the defined terms set forth in the Parties' Settlement Agreement attached as Attachment 1 to Exhibit A, Estes Decl.

Standards Act ("FLSA"). On April 20, 2020, Plaintiffs filed their First Amended Collective and Class Action Complaint which added Randi Lavery, Sandra Swain, and Anna Thurman as named Plaintiffs and, along with the pending FLSA claims, asserted violations of Arkansas and Missouri state common law and statutory wage and hour laws.

The Plaintiffs now move, without opposition, for approval of the Settlement reached on January 19, 2021, when the Parties accepted Mediator Michael Russell's settlement proposal which resolved all claims in this litigation (the "Settlement" or "Settlement Agreement").[2]

After two and one-half (2½) years of hard-fought litigation, this Settlement provides substantial relief to Plaintiffs and the Class Members who joined the action after the Court conditionally certified Plaintiffs' claims under the FLSA in April of 2019. This Settlement Agreement is the result of direct negotiations between the Parties that took place during an all-day mediation on January 11, 2021, and which was consummated on January 19, 2021, when the Parties accepted Mediator Russell's compromise settlement proposal, which provides material benefits to Plaintiffs and Class Members considering the history of litigation and the risks attendant to continued litigation.

## II.     FACTUAL AND PROCEDURAL HISTORY

Plaintiff Smith's original Complaint sought certification of a collective action on behalf of all persons employed by Defendants as hourly-paid, non-exempt Property Managers and District Managers from September of 2015 through the present, for violations of the overtime provisions of the FLSA. (Doc. No. 1). Plaintiff sued Defendant MACO, a privately owned company which provides management services for low income multi-family housing units and apartments in ten

---

[2] A copy of the Settlement Agreement is attached hereto as Attachment 1 to <u>Exhibit A</u>, Estes Decl.

(10) states including Arkansas, Illinois, Indiana, Kansas, Kentucky, Mississippi, Missouri, Nebraska, Oklahoma, and Tennessee, and which "manages over 12,000 housing units scattered throughout [the] ten states."[3]  Plaintiff also named MACO's President and owner James K. Maddox and his wife, Katrina Thompson, who served as a Regional Director for MACO, as Defendants, alleging that they were "employers" under the FLSA[4] who were jointly and severally responsible for the damages sought by the Plaintiffs.  *Id.*

The crux of Plaintiff Smith's lawsuit was that Defendants required Plaintiff and similarly-situated Property Managers and District Managers to work uncompensated hours off-the-clock in order to complete their heavy volume of assigned job duties, which Plaintiff alleged were impossible to perform in less than forty (40) hours a week, or within the restricted weekly schedules established by Defendants.  *Id.*  Specifically, Plaintiff alleged that Defendants achieved this result by mandating that Property Managers record no more than their scheduled hours on their timesheets; that District Managers record no more than 7.5 hours a day and 37.5 hours in a workweek on their timesheets; pressuring employees to under-report their time, including overtime hours, despite being required to accomplish all of their job duties; and by implementing a "no-overtime" policy which Defendants enforced through their regional supervisory personnel.  *Id.*

Plaintiff filed her Motion for Conditional Certification of this Matter as a Collective Action and for Approval of 29 U.S.C. §216(b) Notice, along with her accompanying Memorandum and supporting Exhibits, on January 15, 2019 (Doc. Nos. 33-34) which, after full briefing by the Parties, the Court granted by Memorandum Opinion and Order on April 1, 2019.  (Doc. Nos. 41-42).  As a result of the issuance of Court-supervised Notice to eligible present and former Property

---

[3] See www.macocompanies.com.

[4] The FLSA broadly defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." *See* 29 U.S.C. 203(d).

3

Managers and District Managers, one-hundred (100) present and former MACO employees filed consents to join this action and, along with Plaintiff Smith, are now entitled to participate in this Settlement as Settlement Class Members.

Plaintiffs Randi Lavery, Sandra Swain, and Anna Thurman joined this action as named Plaintiffs on April 20, 2020, when Plaintiffs filed their First Amended Collective and Class Action Complaint. (Doc. No. 84). The addition of Plaintiffs Lavery and Swain, who worked for Defendants in Missouri as a Property Manager and a District Manager, respectively, provided standing to assert common law claims of breach of contract and unjust enrichment, and violations of the Missouri Minimum Wage Law ("MMWL") on behalf of Missouri-based Class Members. *Id.* The addition of Plaintiffs Thurman and Swain,[5] who worked for Defendants in Arkansas as a Property Manager and a District Manager, respectively, provided standing to assert common law claims of breach of contract and unjust enrichment, and violations of the Arkansas Minimum Wage Act ("AMWA") on behalf of Arkansas-based Class Members. *Id.*

As set forth in greater detail below, the Parties engaged in substantial discovery throughout the course of this litigation, including service of multiple sets of discovery requests, production of tens of thousands of pages of documents and data, and numerous depositions.

On January 11, 2021, the Parties attended an all-day mediation with Mediator Michael Russell. Although the mediation concluded without a resolution, Mediator Russell extended a mediator's settlement proposal to the Parties on January 13, 2021, the terms of which were accepted by the Parties on January 19, 2021. The terms of Mediator Russell's settlement proposal are the foundation upon which the Parties' Settlement Agreement is based, and which the Parties

---

[5] Swain worked for Defendants as a District Manager in both Arkansas and Missouri. *Id.*

now seek to have this Court approve. The Parties believe that their Settlement is fair and reasonable in light of the experience of Class Counsel in other wage and hour cases, and the risks, uncertainties and cost of several years of additional litigation the Parties faced if the Settlement was not reached. Exhibit A, Estes Decl., ¶¶18, 32.

### III. SETTLEMENT TERMS

A summary of the principal terms of the Parties' Settlement Agreement are set forth below. In exchange for MACO's agreement to pay a Gross Settlement Amount of Three Million, One Hundred Thousand Dollars ($3,100,000.00),[6] Plaintiffs and Class Members have agreed to waive and release the Defendants from all wage-related claims applicable to the work performed for MACO during the Class Period ("Released Claims"), and dismiss this case with prejudice.

#### A. Settlement Award Payments to Settlement Class Members

The Settlement Agreement provides for the payment of One Million, Nine Hundred Seventy Thousand, Seven Hundred Eighty-Five Dollars and Ninety Cents ($1,970,785.90) to Settlement Class Members based on an allocation formula typically used in minimum wage and overtime pay class/collective actions which assumes that each Settlement Class Member worked the same number of overtime hours each workweek; applies each Settlement Class Member's actual rate of pay; and which assigns each Settlement Class Member a pro-rata share of the One Million, Nine Hundred Seventy Thousand, Seven Hundred Eighty-Five Dollars and Ninety Cents

---

[6] Under the terms of the Parties' Agreement, MACO is obligated to fund payment of the Gross Settlement Amount, although in the event of MACO's default, the individual Defendants, James K. Maddox and Katrina Thompson, become guarantors who are obligated to pay the Gross Settlement Amount. *See* Exhibit A, Estes Decl., Attachment 1, ¶11.

5

($1,970,785.90) based on the number of workweeks each Settlement Class Member worked within the Class Period.[7]

The Settlement Agreement provides that within thirty (30) days of the first business day following entry of an order approving this settlement, defined as the "Effective Date" (*see* Exhibit A, Estes Decl., Attachment 1, ¶8f), MACO will issue and deliver to Class Counsel Settlement Award Checks for each Settlement Class Member in the amounts set forth in the allocation spreadsheet attached as Attachment 2 to Exhibit A, the Estes Declaration.[8] By the terms of the Settlement Agreement and in order to reduce costs, Class Counsel have agreed to act as settlement administrator. *Id.,* ¶14. Pursuant to that undertaking, Class Counsel are obligated to distribute all Settlement Award Checks to Settlement Class Members within five (5) business days of receipt of the same, and re-mail them to any forwarding addresses within five (5) business days following receipt of returned mail. *Id.*. If any Settlement Award Check is returned without a forwarding address, Class Counsel are obligated to undertake reasonable efforts, such as skip tracing, to locate such Class Members. *Id.* The Parties have agreed that there will be no reversion of unclaimed settlement funds, if any, to Defendants, and that any funds which remain unclaimed within one-hundred and eighty (180) days after being received by Class Counsel will be re-distributed as a *cy pres* award to the Legal Aid Society of Middle Tennessee & The Cumberlands.

---

[7] "Class Period" as defined in the Settlement Agreement is the five-year period prior to the filing of the Action through January 19, 2021. *See* Exhibit A, Estes Decl., Attachment 1, ¶8c. This time period encompasses the statute of limitations periods applicable to certain state law claims, through and including January 19, 2021, which is the date the Parties accepted the mediator's settlement proposal.

[8] Each participating Class Member will receive two checks, one for back wages subject to withholding and reported on IRS Form W-2, and another check in an equal amount representing non-wage penalties and liquidated damages to be reported on an IRS Form 1099. *See* Exhibit A, Estes Decl., Attachment 1, ¶12.

6

## B. Service Award Payments to Representative Plaintiffs and Contributing Class Members

Separate and apart from the Settlement Award distributions to individual Class Members totaling One Million, Nine Hundred Seventy Thousand, Seven Hundred Eighty-Five Dollars and Ninety Cents ($1,970,785.90), MACO has agreed to pay a service award to Plaintiff Tami Smith in the amount of Fifteen Thousand Dollars ($15,000.00), and service awards to Plaintiffs Randy Lavery, Anna Thurman, and Sandra Swain in the amount of Ten Thousand Dollars ($10,000.00) each for the services they performed on behalf of Class Members. *See* <u>Exhibit A</u>, Estes Decl., Attachment 1, ¶13.

MACO has also agreed to pay Class Members (other than the four named Plaintiffs) who provided deposition testimony in the Action, namely, Beatrice Wigfall, Krista Gray, Tiffany Henry, and Kathy Ungerman, a service award of Three Thousand Dollars ($3,000.00) each as a result of their contributions to the Class recovery. *Id.*

These service awards are to be paid on the same schedule as Class Member Settlement Awards and will be reported on an IRS Form 1099, and will not be subject to federal or state withholdings. *Id.*

## C. MACO's Payment of Costs and Attorneys' Fees to Dickinson Wright PLLC, and to Howell Law, PLLC.

In addition to the funds MACO has agreed to pay for distribution to the Class Members and to cover service awards, MACO has agreed to pay $38,984.10 in costs, and a total of $1,033,230.00 in attorneys' fees to be divided between the two law firms which served as Class Counsel for their professional services rendered to the Class over the course of the last two and one-half (2½) years. *See* <u>Exhibit A</u>, Estes Decl., Attachment 1, ¶15a-b. These fees and expenses are to be paid on the same schedule as Class Member Settlement Awards and service awards.

7

### D. Released Claims

In consideration of the settlement sums to be paid by MACO, the Class Members have agreed to release all "Released Claims" against Defendants, which include those that were asserted under the FLSA and all similar, derivative, and related Arkansas and Missouri state law claims for alleged unpaid wages. *See* <u>Exhibit A</u>, Estes Decl., Attachment 1, ¶¶8i, 9. If approved, the Settlement Agreement resolves fully, finally, and with prejudice, all claims for unpaid wages that Settlement Class Members have against the Defendants which arose out of work performed for MACO during the Class Period. *Id.* Within seven (7) days of Class Counsel's receipt of the Settlement Award Checks and Class Counsel's fees and costs from MACO, the Parties are obligated to file a joint stipulation of dismissal of the Action with prejudice, and take any further action necessary for the Court to dismiss the Action. *See* <u>Exhibit A</u>, Estes Decl., Attachment 1, ¶11.

### IV.     THE PARTIES' SETTLEMENT SHOULD BE APPROVED

### A.     Standard for Approval of Settlement of FLSA Collective Actions

In the context of a private lawsuit brought under Section 216(b), a plaintiff may settle and release FLSA claims against a company if the parties present the district court with a proposed settlement, and the district court enters a stipulated judgment approving the fairness of the settlement. *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982).

In reviewing a settlement of a private FLSA claim, the court reviews the proposed settlement for fairness and to determine whether the settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Lynn's Food Stores, Inc*., 679 F.2d at 1355; *see also Bartlow v. Grand Crowne Resorts of Pigeon Forge*, No. 11-400, 2012 WL 6707008, at *1 (E.D. Tenn. Dec. 26, 2012); *Wills v. Cellular Sales of Tenn., LLC*, No. 12-391, 2014 WL 8251539,

at *1 (E.D. Tenn. Aug. 18, 2014);  *Simmons v. Mathis Tire & Auto Serv., Inc.*, No. 13-2875, 2015 WL 5008220, at *1 (W.D. Tenn. Aug. 20, 2015).  When it appears that a settlement "reflect[s] a reasonable compromise over issues, such as FLSA coverage or computation of back wages[] that are actually in dispute," the Court should "approve the settlement in order to promote the policy of encouraging settlement of litigation."  *Lynn's Food Stores*, 679 F.2d at 1354.  Moreover, a court presiding over an FLSA suit "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b).

### B.     A Bona Fide Dispute Exists Over Liability and Damages

In reviewing the settlement of a plaintiff's FLSA claims, the district court must "'ensure that the parties are not, via settlement of [the] claims, negotiating around the clear FLSA requirements of compensation for all hours worked, minimum wages, maximum hours, and overtime.'" *Rotuna v. W. Customer Mgmt. Grp. LLC*, 2010 WL 2490989 at *5 (N.D. Ohio June 15, 2010)(citation omitted).  The existence of a bona fide dispute serves as a guarantee that the parties have not manipulated the settlement process to permit the employer to avoid its obligations under the FLSA.  *Id.*; *Ochs v. Modern Design, Inc.*, 2014 WL 4983674, at *2 (N.D. Ohio Oct. 6, 2014).

At the heart of this case is whether Class Members worked uncompensated overtime hours, and if so, how much.  Class Members maintain that Defendants failed to pay them for the overtime that they worked, while Defendants dispute any liability whatsoever.  The Parties have engaged in hard-fought litigation for over two years, and resolved their dispute only after extensive discovery, motion practice, and acceptance of an experienced mediator's settlement proposal.  *See* Exhibit A, Estes Decl., ¶11.  Absent Court approval of the Parties' Settlement, the following issues remain

9

for resolution at trial with regard to which the Parties have sharply differing views: 1) whether Class members worked uncompensated overtime hours off-the-clock; 2) if so, whether Defendants had actual or constructive knowledge of such uncompensated work; 3) the nature and extent of any off-the-clock work; 4) whether liquidated damages should be awarded; 5) whether a two or three year statute of limitations applies; 6) whether the individual Defendants are "employers" under the FLSA such that they are jointly and severally liable for any damage award; and 7) whether Defendants could succeed in decertifying the case. *Id.*.

Hence, there can be no question but that the Parties' Settlement Agreement resolves bona fide disputes under the FLSA and contains terms that seek to avoid further protracted and hotly contested litigation under the FLSA and corollary state laws. *See Lynn's Food Stores, Inc.*, 679 F.2d at 1354 ("Thus, when the parties [to the litigation] submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching.").

## C.   The Parties' Settlement Agreement is Fair, Reasonable, and Adequate

Having found a bona fide dispute, a court next considers whether the settlement is "a fair and reasonable resolution of [that] bona fide dispute." 29. U.S.C. §216(b). The Sixth Circuit has stated the factors to be balanced when evaluating the fairness and reasonableness of a settlement: "(1) the risk of fraud or collusion, (2) the complexity, expense and likely duration of the litigation, (3) the amount of discovery engaged in by the parties, (4) the likelihood of success on the merits, (5) the opinions of class counsel and class representatives, (6) the reaction of absent class members, and (7) the public interest." *Does 1-2 v. Déjà vu Services, Inc.*, 925 F.3d 886, 894 (6th Cir. 2019)(citing *Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)).

10

First, there is absolutely no risk of fraud or collusion between the Parties in a concerted effort to evade the provisions of the FLSA. The lengthy, hard-fought litigation, coupled with the magnitude of the total settlement sum to be paid and the excellent results achieved on behalf of the Class Members preclude any possibility of that. Moreover, the fact that the Parties settled based upon acceptance of a well-respected mediator's settlement proposal validates the bona fide nature of the Parties' Settlement Agreement. *See Hainey v. Parrott*, 617 F. Supp. 2d 668, 673 (S.D. Ohio 2007)("The participation of an independent mediator in the settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties.").

Second, the complexity, expense, and likely duration of the litigation had the Parties not settled weighs heavily in favor of finding that this Settlement is fair and reasonable. It is no secret that "[e]mployment cases in general, and wage-and-hour cases in particular, are expensive and time-consuming." *Daoust, et al. v. Maru Restaurant, LLC, et al.*, 2019 WL 2866490 at *2 (E.D. Mich., July 3, 2019). The Parties continue to have strong disagreements over the merits of Plaintiffs' claims. If forced to litigate this case further, the Parties would certainly engage in complex, costly and extended squabbling over the issues. Plaintiffs faced multiple defenses raised by Defendants and expensive and protracted hurdles to victory. Some of those hurdles include prevailing on the numerous legal issues noted above, successfully opposing a motion for decertification, and winning at trial. Without question, if the case had not settled, the Parties would have spent significant time and resources completing more discovery depositions, drafting discovery motions, dispositive motions, and trial-related motions. Thereafter, the Parties faced the prospect of an expensive, lengthy jury trial as well as the inevitable post-trial motions and appeals. Even if Plaintiffs were successful on the merits of their claims, Defendants intended to dispute the

11

amount that would be due to them, so the amount of their recovery is uncertain. *See* Exhibit A, Estes Decl., ¶12. The Settlement Agreement eliminates these burdens and hurdles, and thus, weighs in favor of approval.

Third, the Parties have conducted sufficient discovery to permit them and their experienced counsel to collect, obtain, and review evidence, evaluate their claims and defenses, understand the scope of potential damages, and appreciate the risks involved in continued litigation. Specifically, they engaged in substantial discovery throughout the course of this litigation, including responding to four (4) sets of written discovery requests which resulted in the production, review, and analysis of some fifty-six thousand forty (56,040) pages of documents. *Id.* at ¶9, 11. Moreover, the litigation was marked by various and sundry discovery disputes which resulted in at least three (3) telephone discovery conferences before the presiding Magistrate Judge.[9] Defendants took eight (8) depositions, including depositions of named Plaintiffs Lavery, Smith, Swain, and Thurman, as-well-as four (4) Class Members Krista Gray, Tiffany Henry, Kathleen Ungerman, and Beatrice Wigfall. Plaintiffs took three (3) depositions, including the two named individual defendants Maddox and Thompson, and Sheila Calvert, MACO's General Manager. *Id.*

Fourth, given the number of legal and factual issues which remain, the likelihood of success on the merits is by no means certain for either party. "Litigation inherently involves risks." *In re Painewebber Ltd. P'ships Litig.,* 171 F.R.D. 104, 126 (S.D.N.Y. 1997). Moreover, the range of possible recovery was uncertain. Approval of the Parties' Settlement Agreement provides substantial compensation for the Class Members while eliminating the risks of continued litigation. *See* Exhibit A, Estes Decl., ¶¶15-16. "Class counsel and the class representatives may compromise

---

[9] Specifically, telephonic discovery conferences were held on October 16, 2020; November 5, 2020; December 30, 2020; and January 4, 2021. Exhibit A, Estes Decl., ¶11.

their demand for relief in order to obtain substantial assured relief for the plaintiffs' class."
*Williams, et al. v. Vukovich, et al.*, 720 F.2d 909, 922 (6th Cir. 1983).

Fifth, Class Counsel and the Plaintiffs, as class representatives, approve the Settlement *See* Exhibit A, Estes Decl., ¶¶12-13, 16, 32; Exhibit H, Howell Decl., ¶9. Class counsel are highly experienced in wage-and-hour class actions, have acted in good faith, and have represented their clients' best interests and followed their wishes in reaching the Settlement Agreement. Estes Decl. at ¶14. Based upon their decades of experience handling complex class and collective action cases, Class Counsel believe that the Settlement is fair and reasonable (*id.*) which weighs heavily in favor of approving the settlement. *Williams et al. v. Vukovich et al.,* 720 F. 2d at 922-23 ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs."). Moreover, the Plaintiffs and Class Members strongly support this Settlement. *See* Exhibit B, Smith Decl*.,* ¶16 ("I believe this is an excellent result given the issues in this case."); Exhibit C, Swain Decl., ¶17; Exhibit D, Lavery Decl., ¶17; Exhibit E, Thurman Decl., ¶17.

Sixth, individual Class Members' reaction to the Settlement has been positive. *See* Exhibit F, Wigfall Decl.,¶8; Exhibit G, Henry Decl.,¶8. Class Counsel have communicated with a number of Class Members who are very much in need of the financial benefits this Settlement provides, especially considering the hardships many have experienced as a result of the Covid-19 pandemic. All Class Members have been apprised about the Parties' tentative Settlement, and none have yet objected. *See* Exhibit A, Estes Decl., ¶13. Moreover, the support of each of the four (4) named Plaintiffs, who are representative of the Class, is certainly indicative of the support of the Class as a whole. *Id.*

Last, the Sixth Circuit has recognized that "the law generally favors and encourages the settlement of class actions." *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981); *Pelzer v.*

*Vassalle*, 655 F. App'x 352 (6th Cir. 2016)("It is axiomatic that the settlement of class-action litigation is favored."). Approval of the Parties' Settlement Agreement not only preserves scarce judicial resources by furthering the public interest in settlement, it furthers the remedial and humanitarian policies underlying the FLSA.

**D.    The Parties' Settlement Agreement Confers Substantial Benefits on the Class**

A strong indicator of the fairness, reasonableness, and adequacy of the Settlement is the substantial benefits being conferred on Class Members which Class Counsel believe yield the highest average workweek value and average per capita recovery of any case they have personally been involved with during their decades-long careers. *See* Exhibit A, Estes Decl., ¶15.

This Settlement results in an average workweek value of Three Hundred Thirty Dollars and Forty Cents ($330.40) for each week worked by Settlement Class Members within the Class Period,[10] which is a remarkably high workweek value in class and/or collective action cases seeking minimum and/or overtime wages. *Id.* at ¶16. This Settlement also results in an average recovery for each Class Member of Nineteen Thousand, Five Hundred Twelve Dollars and Seventy-Three Cents ($19,512.73), although individual Class Members will of course be entitled to receive more or less than this average depending upon their length of employment with MACO during the Class Period. *Id.* Based upon their length of service, fifty (50) out of the one-hundred and one (101) participating Class Members will receive a Settlement Award of $10,000.00 or more; twenty-four (24) of these will receive Settlement Awards of between $25,000.00 and $50,000.00; four (4) will receive Settlement Awards of between $50,000 and $100,000.00; and two (2) will receive Settlement Awards in excess of $100,000.00.[11] *Id.*

---

[10] Class Members worked a total of 5,964.73 workweeks during the Class Period. Hence, $1,970,785.90 ÷ 5,964.73 workweeks = $330.40 workweek value. *Id.* at ¶16.

[11] *See* allocation spreadsheet attached as Attachment 2 to Exhibit A, Estes Decl.

14

It is a court's responsibility to ensure that the distribution of the settlement proceeds is equitable and does not unfairly favor or disfavor certain class members. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855 (1999). Equity does not dictate, however, that the distribution be made purely on a pro-rata basis. *See UAW v. GMC*, 497 F.3d 615, 628 (6th Cir.2007)(citing *Ortiz*, 527 U.S. at 855)("Neither the Federal Rules of Civil Procedure nor the Supreme Court requires that settlements offer a pro rata distribution to class members; instead the settlement need only be 'fair, reasonable, and adequate.'"). Nevertheless, the distribution methodology utilized in this case is being done on a pro rata basis which assumes Class Members worked the same average number of uncompensated overtime hours, then applies each Class Members' actual rate of pay, and assigns each of them a share of the settlement proceeds based on the number of workweeks each Settlement Class Member worked within the Class Period. *See* <u>Exhibit A</u>, Estes Decl., Attachment 1, ¶15d. This method is the one most commonly utilized in wage and hour cases, and is judicially recognized as fair and equitable. *See, e.g., Rotuna et al. v. West Customer Management Group, LLC*, 2010 WL 2490989 at *6 (N.D. Ohio, June 15, 2010)("The Court approves the method of calculation and proposed distribution of settlement payments as fair and equitable. The total Settlement Payment, after deduction of the service awards to the Representative Plaintiffs and attorneys' fees and expense reimbursements to Class Counsel and the Class Administrator, is to be distributed to the Class Members, which are to be calculated on a proportional basis based on the individuals' relevant workweeks and shifts during the [Class Period]."). Moreover, Class Members will not be required to sign claim forms or jump through other hoops to participate in the Settlement, but will simply be sent Settlement Award Checks which are calculated based on the above-described formula. *See* <u>Exhibit A</u>, Estes Decl., Attachment 1, ¶14.

15

### E.    Arm's Length Mediation and Mediator's Settlement Proposal

This Settlement was reached as a result of arm's length negotiations which initially failed, but finally succeeded when Mediator Michael Russell made a settlement proposal which was accepted by both sides, and which forms the basis for the settlement terms the Parties now seek to have this Court approve. *See* Exhibit A, Estes Decl., ¶18. The involvement of Mediator Russell, a well-respected third-party neutral who is exceptionally well-versed in FLSA actions, in assisting the Parties to resolve their differences is a further indicator that the Parties' Settlement is fair and reasonable. *Id. See Hainey v. Parrot*, 617 F.Supp.2d 668, 673 (S.D. Ohio 2007)("The participation of an independent mediator in the settlement negotiations virtually assures that the negotiations were conducted at arm's length and without collusion between the parties.").

### F.    The Service Awards to Representative Plaintiffs and Contributing Class Members are Fair and Reasonable

"Courts routinely recognize and approve incentive awards for class representatives and deponents" for the services they provided and the risks they incurred during the course of the class action litigation. *See, e.g., Wineland, et al. v. Casey's General Stores, et. al.,* 267 F.R.D. 669, 677 (S.D. Iowa 2009); *Nelson, et al., v. York County,* 382 F. Supp. 2d 206, 226 (D.C. Maine 2005)(seventeen class members who were deposed received incentive payments to recognize the time and effort they expended in preparing for and attending the deposition); *Huguley v. Gen. Motors Corp.,* 128 F.R.D. 81, 85 (E.D. Mich. 1989)(approving enhancement award of $322,496.00 to eighty-eight anecdotal witnesses and named plaintiffs because the "named plaintiffs and witnesses are entitled to more consideration than class members generally because of the onerous burden of litigation they have borne").

The service awards have been tailored to compensate each Plaintiff and Class Member in proportion to the value of her contributions, and time and effort in prosecuting the claims asserted

16

in this Action. *See* Exhibit A, Estes Decl., ¶20. Defendants have agreed to pay enhancement and/or service awards to those who served as Class Representatives on behalf of the Class and those who sat for depositions as follows: Tami Smith, the original representative Plaintiff who initiated the litigation against Defendants in September of 2018, is to receive Fifteen Thousand Dollars ($15,000.00); Randi Lavery, Anna Thurman, and Sandra Swain, who joined the Action as representative Plaintiffs in April of 2020, are to receive Ten Thousand Dollars ($10,000.00); and "Testifying Class Members" who provided deposition testimony in the Action, namely, Beatrice Wigfall, Krista Gray, Tiffany Henry, and Kathy Ungerman, are to receive a service award of Three Thousand Dollars ($3,000.00) each. *See* Exhibit A, Estes Decl., Attachment 1, ¶13.

These service awards reflect appropriate compensation for extraordinary services and sacrifices performed by Plaintiffs and certain Class Members who provided timely assistance essential in producing a favorable result on behalf of the Class by answering interrogatories, assisting in responding to discovery, reviewing voluminous documentation produced in discovery, preparing for and giving depositions under oath, providing evidentiary support for the case, submitting declarations, attending meetings and otherwise communicating with Class Counsel, providing insight into MACO's policies and practices, making strategic decisions on behalf of the Class, assisting in and/or attending mediation sessions, and providing other necessary assistance and assuming risks and hardships that were not agreed to or experienced by other Class Members. *See* Exhibit A, Estes Decl., ¶25.

Specifically, Tami Smith initiated this Action which resulted in an excellent recovery on behalf of the Class, spent many hours meeting and conferring with Class Counsel, providing and reviewing documents, and facilitating introductions with witnesses and other Class Members throughout the two and one-half year course of this litigation. Ms. Smith also sat for a deposition

and provided forceful and convincing testimony and documentary evidence on behalf of the Class. Without her considerable contributions Defendants' conduct would have gone unexposed and Class Members would likely have recovered nothing.  *Id.,* ¶22.[12]

Although they became named Plaintiffs after Ms. Smith filed this Action, the addition of Randi Lavery, Anna Thurman, and Sandra Swain provided the standing necessary to allege common law and statutory claims under Arkansas and Missouri law, injecting additional litigation risk to Defendants which contributed to the excellent results achieved on behalf of the Class.  Each of Plaintiffs Lavery, Thurman, and Swain also sat for depositions and provided strong and convincing testimony in support of Class Members' claims.  *Id.,* ¶23.[13]

Beatrice Wigfall, Krista Gray, Tiffany Henry, and Kathy Ungerman materially contributed to this lawsuit's success.  Each were hand-picked by Defendants to sit for a deposition, and incurred the inconvenience and stress of being subjected to lengthy and probing depositions which included, in some cases, taking time off from work and traveling to prepare for and provide deposition testimony.  The deposition testimony provided by these four Class Members, who were geographically disbursed in various areas of MACO's operational territory, cemented the strength of Plaintiffs' case and illustrated the compelling testimony Defendants would likely face at trial, thus providing additional incentive for settlement.  *Id.,* ¶24[14]

---

[12] A description of Plaintiff Smith's contributions and efforts are set forth in her Declaration.  *See* <u>Exhibit B</u>, Smith Decl*.,* ¶12.

[13] A description of Plaintiff Lavery, Thurman, and Swain's contributions and efforts are set forth in their Declarations. *See* <u>Exhibit C</u>, Swain Decl., ¶13; <u>Exhibit D</u>, Lavery Decl., ¶13; <u>Exhibit E</u>, Thurman Decl., ¶13.

[14] A description of Class Members Wigfall and Henry's contributions and efforts are set forth in their respective Declarations.  *See* <u>Exhibit F</u>, Wigfall Decl*.,* ¶6; <u>Exhibit G</u>, Henry Decl*.,* ¶6.

18

The proposed recipients of service awards took on certain recognized risks of stigmatization[15] in suing their former employer in a significant class action case on behalf of present and former Property Managers and District Managers. "Incentive awards are particularly appropriate in wage-and-hour actions where plaintiffs undertake a significant 'reputational risk' by bringing suit against their former employers." *Bellinghausen v. Tractor Supply Company*, 306 F.R.D. 245, 267 (N.D. CA. 2015). Moreover, the service awards to Plaintiffs and deponents are no way excessive, but are fair and reasonable under the circumstances and in line with those awarded in other cases. *Wineland, et al. v. Casey's General Stores, et. al.,* 267 F.R.D. 669, 677 (S.D. Iowa 2009)(awarding $10,000.00 service award to representative plaintiff in FLSA suit); *Johnson v. Midwest Logistics Sys., Ltd.*, 2013 WL 2295880, at *5 (S.D. Ohio May 24, 2013)(approving service payment of $12,500 to the named plaintiff); *Johnson v. Midwest Logistics Sys., Ltd*., 2013 WL 2295880, at *5 (S.D.Ohio, May 24, 2013)(approving a $12,500 enhancement award to the named plaintiff from a $452,380 settlement); *Brandenburg v. Cousin Vinny's Pizza, LLC*, 2019 WL 6310376, at *8 (S.D. Ohio, Nov. 25, 2019)(approving a service award of $10,000 from a $1,140,000 settlement fund); *Arledge v. Domino's Pizza, Inc*., 2018 U.S. Dist. LEXIS 179474, at *17 (S.D. Ohio Oct. 17, 2018)(approving $10,000 service award from a $850,000 settlement fund because "Plaintiff contributed his efforts to the lawsuit and only through Plaintiff's efforts did a large group of low-wage workers receive a substantial award" that "furthered the important public policies underlying the" FLSA); *Salinas v. U.S. Xpress Enters., Inc*., 2018 U.S. Dist. LEXIS 50800, at *26 (E.D. Tenn. Mar. 8, 2018)(approving a service award of $10,000 from a $2,200,000 settlement fund); *Owner-Operator Indep. Drivers Ass'n v. Arctic Express, Inc*., 2016

---

[15] Prospective employers and lenders can easily locate information on-line and through background and credit checks regarding the recipients' involvement in this suit against their former employer.

19

U.S. Dist. LEXIS 128819, at *7 (S.D. Ohio Sept. 21, 2016)(approving two service awards of $25,000 from a $3 million settlement); *Davidson v. Henkel Corp.*, 2015 U.S. Dist. LEXIS 195088, at *3 (E.D. Mich. Dec. 8, 2015)(approving $15,000 service award for the named plaintiff from a $3,350,000 settlement fund).

### G. Legal Aid Society of Middle Tennessee & The Cumberlands is an Appropriate *Cy Pres* Recipient to Receive any Unclaimed Funds

"Federal courts have broad discretionary powers in shaping equitable decrees for distributing unclaimed class action funds." *Van Gemert v. Boeing Co.*, 739 F.2d 730, 737 (2d Cir. 1984); *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1307 (9th Cir. 1990), *cited approvingly by Everett v. Verizon Wireless, Inc.*, 460 F.3d 818, 827 (6th Cir. 2006). Courts in the Sixth Circuit have noted that designating a *cy pres* recipient "is often preferred over escheat to the government." *See, e.g., Rosser v. A & S Contracting, Inc.*, 2017 WL 666121, at *2 (S.D. Ohio Feb. 17, 2017)(citation omitted)(approving *cy pres* in FLSA case); *In re Polyurethane Foam Antitrust Litig.*, 178 F. Supp. 3d 621, 623 (N.D. Ohio 2016)(citation omitted)(noting that courts typically prefer distributing funds to a *cy pres* recipient "[r]ather than see money escheat to the state or revert to the defendant").

The Parties have agreed that any settlement funds which remain unclaimed within one-hundred and eighty (180) days after being received by Class Counsel will be distributed as a *cy pres* to the Legal Aid Society of Middle Tennessee & The Cumberland ("Legal Aid"). Although Class Counsel believe there will be few, if any, unclaimed funds (*see* Exhibit A, Estes Decl., ¶26), Legal Aid was selected because it is a nonprofit organization focused on, among other things, helping low-income citizens collect back wages owed to them. The mission of Legal Aid thus closely aligns with the goals of the FLSA and the Class Members in this action, and is an appropriate *cy pres* recipient because its "interests reasonably approximate those being pursued by

20

the class." *Rosser*, 2017 WL 666121, at *2 (citation omitted). For this reason, organizations which provide free legal aid to the poor have often been designated as *cy pres* recipients in various matters, including FLSA cases. *See, e.g., Carter v. Anderson Merchandisers, LP*, 2010 WL 144067, *5 (C.D. Cal. Jan. 7, 010)(Legal Aid of Northwest Texas a *cy pres* beneficiary); *Parker v. Time Warner Entertainment Co., L.P.*, 31 F. Supp. 2d 242, 250 (E.D.N.Y. 2009)(*cy pres* distribution to Samuelson Law and the Technology & Public Policy Clinic at Boalt Hall Law School); *Gilliam v. Addicts Rehabilitation Center Fund*, 2008 WL 782596, *3 (S.D.N.Y. Mar. 24, 2008)(*cy pres* award to be paid to The Legal Aid Society); *Diamond Chem. Co., Inc. v. Akzo Nobel Chems. B.V.*, 2007 WL 2007447, at *5 (D.D.C. July 10, 2007)(*cy pres* distribution to go to a newly created endowment fund at The George Washington University Law School); *Superior Beverage Co., Inc. v. Owens Illinois, Inc.*, 827 F.Supp. 477, 478-79 (N.D. Ill. 1993)(*cy pres* distributions awarded to legal aid bureaus and various law school programs, among other beneficiaries).

## V. CLASS COUNSEL ARE ENTITLED TO A FEE EQUAL TO THIRTY-THREE AND ONE-THIRD OF THE GROSS SETTLEMENT AMOUNT

Defendants have agreed to pay Dickinson Wright PLLC, and Howell Law, LLC, which served as Class Counsel for Plaintiffs and Class Members over the last three years, attorneys' fees in the amount of $1,033,230.00, which is equal to thirty-three and one-third (33.33%) of the Gross Settlement Amount, and reimbursement of litigation expenses in the amount of $38,984.10. *See* Exhibit A, Estes Decl., Attachment 1, ¶15a-b. "[C]ourts within this circuit have found one-third common fund attorney's fee awards to be reasonable in similar complex failure-to-pay-overtime cases." *Ware v. CKF Enterprises, Inc.,* 2020 WL 2441415, at *15 (S.D. Ky., May 5, 2020); *Hebert v. Chesapeake Operating, Inc.*, 2019 WL 4574509, at *8 (S.D. Ohio, Sept. 20, 2019)(finding "33% is typical for attorney's fees in common fund, FLSA collective actions"); *Barbee v. NaviHealth*

21

*Inc.*, 3:19-cv-00119, 2020 WL 6365515 (M.D. Tenn., Sept. 21, 2020)(awarding fees equal to 33.33% of the total settlement value).

District courts within the Sixth Circuit may calculate an award of attorneys' fees in common fund cases using either a percentage-of-the-fund calculation or a lodestar approach. *Rawlings v. Prudential-Bache Propsl, Inc.,* 9 F.3rd 513, 517 (6th Cir. 1993)("[W]e conclude that use of either the lodestar or percentage of the fund method of calculating attorney's fees is appropriate in common fund cases…"); *Rotuna et al. v. West Customer Management Group, LLC*, 2010 WL 2490989 at *7 (N.D. Ohio, June 15, 2010)(Court noted, in FLSA case, that "District courts within the Sixth Circuit have the discretion to select one of two methods for calculating an award of attorneys' fees in a common fund case by using either a percentage of the fund calculation or a lodestar multiplier.").   The primary consideration in this Circuit is that the award "be reasonable under the circumstances." *Rawlings,* 9 F.3d at 516.  The percentage of the fund method is particularly appropriate where the result achieved for the class is substantial, and class counsel undertook the representation on a contingent fee basis and advanced significant labor and expenses to litigate the case. *Friske v. Bonnier Corporation*, 2019 WL 5265324, at *2 (E.D. Mich., Oct. 17, 2019).

For the reasons set forth below, Plaintiffs submit that the fees and expenses MACO has agreed to pay Class Counsel as set forth in the Parties' Settlement Agreement are reasonable, and request that this Court award Class Counsel fees and expenses consistent with that Agreement.

### A.    Standard for Assessing Fee Awards in the Sixth Circuit

The Sixth Circuit has identified six considerations that enter into the fixing of reasonable fees by a court including: 1) the value of the benefit rendered to the class; 2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; 3)

22

whether the services were undertaken on a contingent fee basis; 4) the value of the services on an hourly basis; 5) the complexity of the litigation; and 6) the professional skill and standing of all counsel. *Ramey v. Cincinnati Enquirer, Inc.,* 508 F.2d 1188, 1196 (6th Cir. 1974). Application of these factors merit an award of the fees and expenses set forth in the Parties' Settlement Agreement.

### B.     Application of the *Ramey* Factors

#### 1.     Value of the Benefits Achieved

The Supreme Court has instructed that "the most critical factor" governing the reasonableness of a fee award "is the degree of success obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). In cases when "a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Id.* at 435. "'When awarding attorney's fees in a class action, a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved.'" *Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 279 (6th Cir. 2016)(quoting *Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993)).

The results achieved for the Class Members here are exceptional. In fact, in their many decades of litigating wage and hour cases, Class Counsel believe that the result in this case represents the best average workweek recovery, and average recovery per Class Member, that they have ever achieved. Exhibit A, Estes Decl., ¶15. The pool of funds available for allocation among the one hundred and one (101) Class Members, *net* of attorneys' fees, costs, and service awards, is One Million, Nine Hundred Seventy Thousand, Seven Hundred Eighty-Five Dollars and Ninety Cents ($1,970,785.90). The average workweek value attributable to each week Class Members worked within the Class Period is Three Hundred Thirty Dollars and Forty Cents ($330.40), and the overall average recovery for each Class Member is Nineteen Thousand, Five Hundred Twelve

23

Dollars and Seventy-Three Cents ($19,512.73).[16]   *Id.,* ¶16.  Moreover, fifty (50) of the one-hundred and one (101) participating Class Members will receive a Settlement Award of $10,000.00 or more; twenty-four (24) of these will receive Settlement Awards of between $25,000.00 and $50,000.00; four (4) will receive Settlement Awards of between $50,000 and $100,000.00; and two (2) will receive Settlement Awards in excess of $100,000.00.[17]   *Id.*   These individual allocations represent the recovery of 17.27 of overtime hours.  *Id.*   These are truly life-changing results for low-income workers whose average hourly wage during the Class Period was only $12.56.  *Id.*

The benefits to the Class are even more substantial considering the defenses raised by Defendants and the attendant expense, risks of non-recovery or partial recovery, difficulties, delays, and uncertainties of continued judicial proceedings, and the inevitable post-trial proceedings.  In sum, the settlement brings meaningful and certain monetary value to Class Members in the immediate future, in exchange for forfeiture of the chance of achieving a better result years down the road after additional protracted, costly, and risky litigation proceedings. Class Counsel and the Class Representatives believe that the risks and considerable additional costs and delays of continued judicial proceedings warranted acceptance of Mediator Russell's settlement proposal.  *Id.* at ¶32.  The views expressed by Mr. Russell, an experienced and respected mediator who has handled hundreds of employment disputes as both a mediator and advocate, and

---

[16] By comparison, the average class member recoveries in *Barbee, et al. v. NaviHealth Inc.*, 3:19-cv-00119, 2020 WL 6365515 (M.D. Tenn., Sept. 21, 2020), in which class counsel were awarded fees equal to 33.33% of the total settlement value, were $1,883.61, and $10,521.32, for FLSA and Rule 23 class members, respectively.  *See id.*, Doc. No. 97, p. 10.  Moreover, the maximum payouts of $7,858.17 and $28,185.17 to FLSA and Rule 23 class members, respectively, in the *Barbee* case are dwarfed by those in this Action.

[17] *See* allocation spreadsheet attached as Attachment 2 to <u>Exhibit A</u>, Estes Decl.

who has considerable wage and hour class action experience, informed and influenced Class Counsel's decisions and recommendations regarding settlement. *Id.* at ¶¶11, 18.

### 2.    Public Policy Considerations

"If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages that are actually in dispute; we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation." *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982). *Accord, Crawford v. Lexington-Fayette Urban Cty. Gov't*, 2008 WL 4724499, at *9 (E.D. Ky. Oct. 23, 2008)("Given the uncertainty surrounding a possible trial in this matter, the certainty and finality that comes with settlement also weighs in favor of a ruling approving the agreement" since "such a ruling promotes the public's interest in encouraging settlement of litigation.").

 The policy favoring the settlement of collective and/or class actions applies with particular force here. "Employment cases in general, and wage-and-hour cases in particular, are expensive and time-consuming." *Daoust, et al. v. Maru Restaurant, LLC*, *et al.*, 2019 WL 2866490 at *2 (E.D. Mich., July 3, 2019). The Parties' Settlement Agreement provides substantial benefits to Class Members promptly and efficiently, and amplifies the benefits of that relief through the economies of class resolution and preservation of scarce judicial resources. Class Counsels' many decades of success and experience representing workers in wage-hour litigation undoubtedly played an important role in achieving an excellent settlement on behalf of the Class. Exhibit A, Estes Decl., ¶¶s7, 17.

Where relatively small claims can only be prosecuted through aggregate litigation, "private attorneys general" play an important role. *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338-39 (1980). Attorneys who act as private attorneys general and further the public interest must be

adequately compensated for their efforts. *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 51(2nd Cir. 2000)(commending the "sentiment in favor of providing lawyers with sufficient incentive to bring common fund cases that serve the public interest."). Moreover, "[s]ociety's stake in rewarding attorneys who bring class action wage and hour cases favors the requested award." *Gentrup v. Renovo Servs., LLC*, 2011 WL 2532922, at *4 (S.D. Ohio June 24, 2011). *Accord, Kritzer v. Safelite Solutions, LLC*, 2012 WL 1945144, at *9 (W.D. Ohio, Sept. 30, 2013)("The second factor, society's stake in rewarding attorneys who produce such benefits, also favors the proposed attorney-fee award. The attorney-fee award proposed in this case, though substantial, must be viewed in conjunction with the substantial award garnered in favor of the class. Society has a stake in rewarding attorneys who achieve a result that the individual class members probably could not obtain on their own").

### 3. Class Counsel's Services were Rendered on a Contingency Fee Basis

Class Counsel undertook this litigation on a contingency fee basis, agreeing to front the considerable costs certain to be incurred in a sizable FLSA collective action case, and running the risk that if they did not prevail, they would receive no reimbursement for the costs they incurred and would receive nothing in payment for their services. *See* Exhibit A, Estes Decl., ¶8. Unlike counsel who defend FLSA collective actions and who are paid regularly throughout the course of a case regardless of outcome, Class Counsel have received no compensation for their work on behalf of the Class over the course of the last thirty (30) months. *Id.*

Courts have consistently recognized that the risk of receiving little or no recovery is a major factor in considering an award of attorneys' fees. *See e.g., Willix v. Healthfirst, Inc.,* 2011 U.S. Dist. LEXIS 21102, at *18 (E.D.N.Y. Feb 18, 2011)(finding that where class counsel took on contingency risk of non-payment, a percentage-of-recovery fee award of 33.33% was

26

"presumptively reasonable.").  Thus, the award of fees Plaintiffs seek here is entirely appropriate given the outstanding results obtained and contingent risk undertaken by Class Counsel.  *Friske v. Bonnier Corporation*, 2019 WL 5265324, at *2 (E.D. Mich., Oct. 17, 2019)("The percentage of the fund method is appropriate here for evaluating the reasonableness of the attorney fee since the result achieved for the class in terms of the cash payments to be made from the fund was substantial, and class counsel undertook the representation on a contingent fee basis and advanced significant labor and expenses to litigate the case. And the percentage award requested is appropriate to compensate class counsel adequately for the risk inherent in that contingent fee representation."); *Barbee v. NaviHealth Inc.*, 3:19-cv-00119, 2020 WL 6365515 (M.D. Tenn., Sept. 21, 2020)(awarding fees equal to 33.33% of the total settlement value).

### 4.    A Lodestar Cross-Check Supports the Requested Fee

Performance of a lodestar cross-check is not required but, rather, is optional.  "Performing a cross-check of the attorney-fee request using Class Counsel's lodestar is optional." *Feiertag v. DDP Holdings, LLC,* 2016 WL 4721208, at *7 (S.D. Ohio Sep. 9, 2016); *Dillow v. Home Care Network, Inc.*, 2018 WL 4776977, at *6 (S.D. Ohio Oct. 3, 2018)(lodestar cross-check of percentage of the fund fee award is "unnecessary").

Indeed, review of agreed-upon attorneys' fees in a settlement agreement, as opposed to a contested fee application, merits a certain level of deference to the parties' agreement.  *See, e.g., Melgar v. O.K. Foods*, 902 F.3d 775, 779 (8th Cir. 2018)("Even assuming the district court had a duty to review the Agreement, at some level, for fairness and reasonableness, review of attorneys' fees included in a settlement agreement requires a certain level of deference by the district court to the parties' agreement."); *Fisher v. S.D. Protection, Inc.*, 948 F.3d 593, 606 (2nd Cir. 2019)("Where the issue of fees and costs is presented in the context of a complete settlement

27

agreement that includes an agreement with respect to fees and costs…[as opposed to a fee application] the inquiry is different as the settlement is submitted for approval, not adjustment or revision.").  Nevertheless, performance of a cross-check of the attorney-fee request using Class Counsel's lodestar here weighs heavily in favor of granting the requested fees.

Dickinson Wright PLLC's cumulative lodestar, through February 22, 2021, is $$853,432.00.[18]  *See* Exhibit A, Estes Decl., ¶27.  Howell Law, PLLC's lodestar through the present is a minimum of $34,500.  *See* Exhibit H, Howell Decl., ¶8.  The requested fee of $1,033,230.00, which is equal to 33.33% of the fund and which will be split between Dickinson Wright PLLC and Howell Law, PLLC, results in a modest multiplier of 1.2.[19]  *Id. at* ¶29.  Under this Circuit's case law, Class Counsels' request for fees in the amount of $1,033,230.00 is therefore reasonable under the circumstances and should be approved.  "A percentage-of-the-fund attorneys' fee award is reasonable when it amounts to double the loadstar attorneys' fees incurred by the plaintiffs' counsel." *Osman v. Grube Inc*., 2018 WL 2095172, at *3 (N.D. Ohio, May 4, 2018).  "In wage and hour wage and hour collective and class actions, lodestar multipliers between 1 and 3 are common."  *Fitzgerald v. P.L. Marketing*, 2020 WL 3621250, at *10 (W.D. Tenn., July 20, 2020).  *See also Arledge v. Domino's Pizza, Inc.,* 2018 WL 5023950, at *5 (S.D. Ohio Oct. 17, 2018)(approving award of attorney's fees in wage and hour collective and class action at a 2.57 lodestar multiplier); *Castillo v. Morales, Inc.,* 2015 WL 13021899, at *7 (S.D. Ohio Dec. 22,

---

[18]  The hourly rates used in the lodestar are $640 an hour for Reid Estes; $465 an hour for Autumn Gentry; $550 an hour for Peter Klett; $625 an hour for attorney Martin Holmes; $350 an hour Josh Burgener; and $300 an hour for Michael Deel.  Exhibit A, Estes Decl., ¶27.  As much as possible, Class Counsel utilized the services of associates and paralegals who are billed at lower hourly rates.  *Id.*

[19]  In comparison, the multiplier approved in *Barbee et al. v. NaviHealth Inc.*, 3:19-cv-00119, 2020 WL 6365515 (M.D. Tenn., Sept. 21, 2020), was 2.1.  *See id.*, Doc. No. 97, p. 12.

28

2015)(approving award of attorney's fees in wage and hour collective and class action at a lodestar multiplier of approximately 2.5, which "is typical of lodestar multipliers in similar cases").

Class Counsel expect to incur additional fees as they are responsible for administering the settlement which will include distributing Service Awards and Settlement Awards, skip-tracing efforts, and follow-up communications explaining the settlement, answering questions regarding tax treatment and other matters, all of which will increase Class Counsels' cumulative lodestar and lower the effective multiplier. *See* Exhibit A, Estes Decl., ¶¶10, 28.

### 5. The Litigation was Complex

Wage-and-hour collective and class actions are, by their very nature, complicated, time-consuming, and expensive to litigate. *See Beckman v. KeyBank, N .A.*, 293 F.R.D. 467, 479–80 (S.D.N.Y.2013). "FLSA claims typically involve complex mixed questions of fact and law." *Barrentine v. Arkansas–Best Freight Sys., Inc.*, 450 U.S. 728, 743 (1981). *Accord, Hebert et al. v. Chesapeak Operating, Inc.*, 2019 WL 4574509 at *5 (S.D. Ohio, Sept. 20, 2019)("FLSA collective and class matters are inherently complex."); *Gentrup v. Renovo Servs., LLC*, 2011 U.S. Dist. LEXIS 67887 at *4 (S.D. Ohio, June 24, 2011)("Society has a stake in rewarding the efforts of the attorneys who bring wage and hour cases, as these are frequently complex matters.").

This case has been pending for over two years and has involved extensive discovery, motion practice, and mediation. Litigation of this case through trial would be complex, expensive, and long, and the Plaintiffs' likelihood of success far from certain. While doable, proving liability and damages for one-hundred and one (101) Class Members who worked at many different MACO locations spread over ten (10) states and in two different job categories would be no easy task. Moreover, the trial would require resolution of numerous issues as the Parties sharply disagreed regarding whether Class Members worked off-the-clock and, if so, the amount of that work;

whether they were entitled to liquidated damages; the proper statute of limitations period; and whether they were similarly situated such that collective action treatment was proper, among other issues. Exhibit A, Estes Decl., ¶¶11-12.

In short, the claims and defenses in this suit have been and would continue to be vigorously contested, and the factual and legal complexities make the Plaintiffs' likelihood of prevailing on the merits anything but clear-cut such that a settlement at this juncture is highly desirable. *Id.* at ¶32.

### 6.    The Professional Standing and Skill of Counsel

Over the last three decades, Class Counsel have successfully prosecuted and favorably settled many employment law class actions, including numerous large wage and hour class actions throughout the nation. *Id.* at ¶¶6-7. Over that span of time Lead Class Counsel have amassed vast experience in federal and state courts pursuing class and collective-action litigation, collecting nearly one-half of a billion dollars ($500,000,000.00) on behalf of plaintiffs in such cases, the bulk of which consists of settlements and judgments in wage and hour collective and class actions. *Id.*

The skill, experience and "staying power" of Class Counsel undoubtedly played a role in achieving a successful outcome for the Class. Dickinson Wright PLLC has approximately five hundred (500) attorneys located in nineteen (19) offices in eleven (11) states and Canada, and commits the resources and personnel necessary to zealously represent clients regardless of the length or difficulty of the litigation.[20] The excellent results achieved for the Settlement Class Members here and in other wage and hour cases is undoubtedly in part the product of Class

---

[20]    For example, litigation against Long John Silver's lasted for over a decade, resulting in a $43 million dollar recovery on behalf of a class of managers after a trial established Long John Silver's liability. Similarly, Class Counsel recovered a $5.1 million dollar judgment against Wyndham Vacation Resorts, Inc., after a trial which was then appealed, resulting in the Sixth Circuit confirming liability and remanding the case for recalculation of damages. The Wyndham case has been ongoing for over eight years now. *Id.* at ¶17.

30

Counsels' reputation and track record of success.  *Id.* at ¶17.  Similarly, defense counsel are well-matched, specializing in defense-side labor and employment cases, with eleven (11) offices throughout the United States and another in London, England (*see www.armstrongteasdale.com*), ensuring that the Settlement reached here is a bona fide, arms-length resolution.

## V.     THE EXPENSES INCURRED ARE REASONABLE AND NECESSARY

Class Counsel request that the Court approve the expenses they incurred in their representation of the Class and which MACO has also agreed to pay.  The appropriate analysis in deciding which expenses are compensable in a common fund case is whether the costs are of the type typically billed by attorneys to paying clients in the marketplace.  *See Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994)("Harris may recover as part of the award of attorney's fees those out-of-pocket expenses that 'would normally be charged to a fee paying client.'")(citation omitted).  The categories of expenses for which Class Counsel seek payment here are the types of expenses routinely charged to hourly-paying clients such as transcripts, filing fees, copying costs, electronic research, and the like.  <u>Exhibit A</u>, Estes Decl., ¶31.  *See In re Packaged Ice Antitrust Litig.*, 2012 WL 5493613, at *8 (E.D.Mich. Nov.13, 2012)(approving costs to plaintiff's counsel related to travel, telephone, printing, postage, Federal Express, Westlaw and IT services).

Moreover, it is well established that an award of attorneys' fees also includes an award of the out-of-pocket costs incurred in sustaining the litigation, such as travel costs, copying costs, telephone charges, and hotel expenses which are customarily incurred in connection with professional services.  *See Calderon v. Witvoet*, 112 F.3d 275 (7th Cir. 1997)(holding that travel and meal expenses are reimbursable as part of the award for attorneys' fees because travel and meal expenses are typically included in billings for an attorneys' professional services); *Wales v. Jack M. Barry, Inc.*, 192 F. Supp. 2d 1313 (M.D. Fla. 2001)(finding travel, meals, lodging,

31

photocopying, long-distance telephone calls, computer legal research, postage, courier service, etc., recoverable under the FLSA as part of an attorneys' fee award).

As part of their Settlement Agreement, Class Counsel seek to recover $39,406.46 in out-of-pocket litigation expenses. All of these costs were reasonable and necessary in connection with litigating and resolving this case and are reimbursable, including costs incurred by Class Counsel for airfare, hotels, taxis, meals, reproduction costs, witness fees, delivery expenses, data hosting charges, computerized research, witness fees, postage, and mediation fees. Exhibit A, Estes Decl., ¶31. For these reasons, the Court should award Class Counsel their litigation costs in the amount of $39,406.46.

## VII.    CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their Motion and enter an Order approving the terms of the Parties' Settlement Agreement.

Respectfully submitted,

/s/ Autumn Gentry
Autumn L. Gentry, TN Bar #20766
Peter F. Klett, TN Bar #12688
DICKINSON WRIGHT PLLC
Fifth Third Center
424 Church Street, Suite 800
Nashville, TN 37219-2392
Tel.: 615.244.6538
agentry@dickinsonwright.com
pklett@dickinsonwright.com

Trevor Howell, TN Bar #9496
HOWELL LAW, PLLC
P. O. Box 158511
Nashville, TN 37215
Tel.: 615.406.1416
Trevor@howelllawfirmllc.com

*Counsel for Class Members*

32

## CERTIFICATE OF SERVICE

 I hereby certify that on this 4th day of March, 2021, a true and exact copy of the foregoing has been served on the following individuals consenting to electronic service by operation of the Court's electronic filing system:

Jeremy M. Brenner
Robert A. Kaiser
Ida S. Shafaie
ARMSTRONG TEASDALE LLP
7700 Forsyth Blvd., Suite 1800
St. Louis, MO 63105
jbrenner@atllp.com
rkaiser@atllp.com
ishafaie@atllp.com

*Attorneys for Defendants*

Kara E. Shea
Sara Anne T. Quinn
BUTLER SNOW LLP
The Pinnacle at Symphony Place
150 Third Avenue South, Suite 1600
Nashville, TN 37201
kara.shea@butlersnow.com
saraanne.quinn@butlersnow.com

*Attorneys for Defendants*

/s/ Autumn L. Gentry
Autumn L. Gentry

4834-7974-0639 v1 [80793-1]